[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 14 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 15 
The commissioners of appraisal awarded to the city for land taken the sum of $25,000, and that award was confirmed by an order of the Special Term of the Supreme Court, which directed the railroad company to pay the sum awarded to the city chamberlain for the use of the city. That order was entered October 22, 1869, and in pursuance thereof, on the 26th day of October, the company paid the amount to the chamberlain, who gave his receipt for the same; and on the next day the city appealed from the order to the General Term, which subsequently reversed the order, and ordered a new appraisal before new commissioners appointed by it.
The company made a motion at the General Term to dismiss the appeal, on the ground that the city had received the amount of the award, and had, therefore, waived its right of appeal, and that motion was, by an order duly entered, denied. From that order, as well as from the order of reversal, the company has appealed to this court.
The payment of the money to the chamberlain did not deprive the city of its right of appeal. It was ordered to be paid, and was paid to him for the use of the city. It does not appear that the city has used or in any way interfered with the money. Section 17 of the General Railroad Act (Chapter 140, Laws of 1850) provides that the court, in its order confirming the report of the commissioners, shall "direct to whom the money is to be paid, or in what bank or in what manner it shall be deposited by the company;" and the direction for payment to the chamberlain was made in pursuance of this provision, and he was made the depositary of the money for the use of the city. His receipt for the money, therefore, without any proof that the city had ever taken or used it, could not be held to be a waiver of the right of appeal. But there is a broader ground for holding that the right of appeal was not waived. Section 18 of the act provides, that after the entry *Page 17 
of the order of confirmation and the payment or deposit of the award as directed, the railroad company shall be entitled to enter upon, take possession of and use the land for the purposes of its incorporation, and that the title of the land shall then vest in it; and notwithstanding this, either party may appeal from the order of the confirmation to the General Term. If there the order shall be reversed, and a new appraisal ordered, the title and possession shall remain in the company, and if, upon the new appraisal, the award be diminished, the land-owner must refund the difference, and if it be increased, the company must pay the difference. But in any event, after the payment or deposit of the first award, the land-owner has, during the corporate existence of the company, lost all right, estate and interest in the land, as well as the use thereof. (Matter of theN Y, W.S. B.R.R. Co., 94 N.Y. 287.) The statute, notwithstanding the company takes possession of the lands and pays or deposits the amount of the award, gives the right of appeal to both parties; and a construction which would confine that right to the railroad company alone would be most unjust. Why should it take the benefit of the award and still have the right of appeal, while the other party, by taking the benefit, loses the right of appeal? If the land-owner cannot take the amount awarded to him in case he desires to appeal, then during the pendency of the appeal and the proceedings for a new appraisal, if one should be ordered, he would lose the use of the land and also of the money awarded as its equivalent. Certainly such a result could not have been intended by the legislature. All the provisions of section 18, for the payment or deposit of the award, divesting and vesting the title, giving the use and possession of the land to the company, securing both parties the right of appeal, and providing for adjusting the differences upon the new appraisal, and the whole scheme, show that it was intended to place both parties upon a footing of equality as to the right of appeal, and that neither should be deprived of such right by taking a benefit under the award. In no other way can the statute be made to work justly and fairly. Still *Page 18 
further, even if the intention to secure to the land-owner the right of appeal, after the receipt by him of the money awarded for the land taken from him, were not so plainly written in the statute, yet we ought to hold that the general rule which deprives a party of the right to appeal from an order or judgment under which he has taken a benefit, is not applicable to such a case as this. That rule is enforced because it would be inequitable and unjust to permit a party to take and hold the benefit of a decision, and yet appeal from and seek to annul it, and the reason of the rule does not apply to such a case as this. Here the city did not seek to enforce the award; it took the money awarded for the land of which it was deprived. It did not seek by the appeal to get the land back again, or to divest the title of the company, but sought only to get more adequate pay for the land. It did not even deprive the company of its money by taking it, as it was bound to pay or deposit it. In such a case, the land-owner does the company no harm by taking the money, and it would be unjust and inequitable not to permit him to take it, and still retain his right of appeal. His acceptance of the money under such circumstances constitutes no waiver and no estoppel.
We are, therefore, of opinion that the order of the General Term refusing to dismiss the appeal of the city should be affirmed.
This court has no jurisdiction to hear the appeal from the order of reversal. Section 18 provides that on the hearing of the appeal to the General Term, "the court may direct a new appraisal before the same or new commissioners in its discretion." It does not appear in the order appealed from that it was not made in the exercise of the discretion thus confided to the Supreme Court, and we cannot look at the opinion to see upon what ground the new appraisal was ordered. (In re Kings Co. Elevated Railway Co.,82 N.Y. 95.) Besides, this is a special proceeding, and appeals to this court are allowed only from final orders in such proceedings, and this order is not final. (Code, § 190; In reMoore, 67 N.Y. 555; In re Horsfalls, 77 id. 514; Roe v.Boyle, 81 id. 305.) The order does *Page 19 
not become final, because the appraisal to be made by the new commissioners may, under section 18, be final and conclusive. It is, nevertheless, not a final order, and if the result should be that the company will not be able to bring to this court for review, the question of law upon which it appears from the opinion of the General Term the new appraisal was ordered, it will be the fault of the law and not of this court. If, however, upon the new appraisal, the commissioners should proceed upon a fundamentally erroneous view of the law, and thus do either party injustice, the ingenuity of counsel may possibly discover some mode for correcting the error, and, if necessary, for procuring a review of the question in this court. (In re P.P. C.I.R.R.Co., 85 N.Y. 489, 496.)
The appeal from the order of reversal should, therefore, be dismissed with one bill of costs upon the two appeals against the appellants.
All concur, except RAPALLO, J., who, having been counsel in the case, takes no part.
Appeals dismissed.