METROPOLITAN DEVELOPMENT AND
HOUSING AGENCY, Petitioner-
Appellant,

v.

H. G. HILL, Jr., and Third National Bank,
Co-Trustees, Respondents-Appellees,

Southern Finishers, Inc., Respondent-
Appellant.

Court of Appeals of Tennessee,
En Banc.

July 26, 1974.

Certiorari Denied by Supreme Court
Jan. 27, 1975.*

---

* Petition of Southern Finishers, Inc., for certiorari was denied by the Supreme Court on January 27, 1975. No petition for certiorari was filed by Metropolitan Development & Housing Agency, however, the entire Court of Appeals, sitting en banc, rendered the decision and determined that the opinion should be published.

Harry G. Nichol, Nashville, for petitioner-appellant.

Vaden M. Lackey, Jr., Nashville, for respondent-appellant, Southern Finishers.

Walter C. Leaver, Jr., Nashville, for respondents-appellees.

## OPINION

TODD, Judge.

The petitioner-condemnor, The Nashville Housing Authority, whose name has now been changed to "Metropolitan Housing and Development Agency," has appealed from a non-jury judgment awarding to respondents-owners, Horace G. Hill, Jr., and Third National Bank, Co-Trustees, the sum of $61,458.00 plus interest of $14,193.44 for the taking of respondent's property by eminent domain.

The other respondent, Southern Finishers, Inc., former tenant on the condemned premises, was awarded damages for moving expenses in a former trial, and was denied further damages in the present judgment. Said respondent has appealed.

A previous non-jury judgment in this cause reached this Court by appeal, resulting in a reversal and remand for retrial. The opinion in said appeal is reported as The Nashville Housing Authority v. Horace G. Hill et al., Tenn.App., 497 S.W.2d 917 (1973).

The respondents, Hill and Bank, Trustees, have moved to dismiss the present appeal of Southern Finishers, Inc., on the ground that the rights of Southern Finishers, Inc., were fully adjudicated upon the former appeal.

The four assignments of error of Southern Finishers, lessee, all relate to so-called "irremovable personalty" which was left on the condemned premises by the lessee, for which lessee claims compensation, and for which lessee was denied compensation by the latest judgment of the Trial Court.

In the former judgment the Trial Court awarded Southern Finishers $50,000.00 as the fair market value of its leasehold interest. The judgment did not mention "irremovable personalty." In the former appeal, both petitioner and respondents, Hill and Bank, Trustees, complained that the $50,000.00 award to Southern Finishers was unjustified. From the former opinion of this Court it is amply evident that the right of occupancy of Southern Finishers, Inc., had terminated prior to the condemnation and that the only bases of lessee's claim against the condemnor were (a) cost of removal of certain machinery and fixtures, and (b) value of machinery and fixtures left on the premises. This Court allowed moving expenses, but denied any recovery for "leasehold interest," stating:

"[1] It is to be observed that Southern Finishers, Inc., introduced no proof whatever as to the value of their 'right of occupancy.' In other words, they claimed no value in place for a continued use of the abandoned trade fixtures. It would seem that the significance of the failure to renew their lease for an unexpired time lies in the fact that at the time of taking by condemnation they were not in position to claim damages for the loss of their lease.

.    .    .    .    .    .

"It appears beyond question that Southern Finishers, Inc., deliberately chose to leave a large part of the equipment and fixtures that were in the building and made no attempt to move many of those that Mr. Fletcher said were not attached to the realty. And, while there is some evidence as to which were 'irre-

movable,' such evidence is very unsatisfactory when applied to the question whether or not these fixtures became or were a part of the building so as to be regarded as realty and, to what extent, if any, they added to the value of the real estate.

.    .    .    .    .    .

"[3] It would seem that, the extent to which the machinery and equipment was so attached to the real estate as to become a part thereof because of its physical connection with the real estate or because of the intention of the parties, its value would become recoverable by the owners and not the lessee.

.    .    .    .    .    .

"[4] A tenant whose premises are condemned cannot place the burden of care or custody of his personalty on the condemnor, and, if he abandons it, is entitled to no compensation therefor. 29A C.J.S. Eminent Domain § 165, Injuries to Lessee.

"[5] The owner of condemned realty is not entitled to an award for the value of trade fixtures left on the premises by his tenant where they do not increase the value of the realty. 29A C.J.S. Eminent Domain § 175(2), page 759.

"[6, 7] A tenant is not entitled to recover for trade fixtures where he voluntarily leaves them on the premises. A tenant is not entitled to be compensated for trade fixtures which are a part of the realty even though he placed them thereon. 29A C.J.S. Eminent Domain § 175(2).

"[8] 'If a fixture, whether installed by the fee owner or a tenant, is integrated into the building proper and is a functional element of the operation of the building, it is compensable, but only to the extent that its existence has an enhancing effect upon the market or rental value of the premises.' Nichols on Eminent Domain, Vol. 2, Sec. 5.83(1), 5.232." 497 S.W.2d, pp. 922, 925, 926.

The disposition of the former appeal by this Court fully disposed of the rights of Southern Finishers, Inc., as follows:

1. Allowed $20,680.16 to Southern Finishers as moving expenses.

2. Disallowed any claim of Southern Finishers for right of continued occupancy.

3. Disallowed any claim of Southern Finishers for trade fixtures left on the premises.

The cause was remanded for other purposes including the ascertainment of the value, if any, *to the owners* (not the lessees) of any trade fixtures remaining attached to the realty.

■ In this view of the record, the rights of Southern Finishers, Inc., were fully determined upon the former appeal, and no issue in regard to Southern Finishers was left for disposition on remand. Therefore, no further proceedings were in order from which Southern Finishers could appeal, and its appeal should be dismissed.

Southern Finishers, Inc., has filed no response to the motion to dismiss, and its assignments of error, brief and argument disclose no reasons why the motion should not be allowed. The brief of this appellant cites authorities from other states to the effect that the condemning authority must pay for trade fixtures of a tenant in possession; but this Court has already decided upon the former appeal that, under the circumstances of the present case, the tenant under an expired lease cannot recover for fixtures left on the premises. That determination has been affirmed by the Supreme Court and has become final. It is no longer open for re-argument or review.

The motion to dismiss the appeal of Southern Finishers, Inc., is sustained; and said appeal is dismissed at the cost of that appellant.

The appellees, Hill and Bank, Trustees, have also moved this Court to dismiss the

appeal of the condemnor on the ground that, following the rendition of final judgment in the Trial Court, and prior to prayer for or allowance of appeal, the condemnor voluntarily paid the amount of the judgment.

In this respect, the record discloses that:

On August 7, 1973, the cause was heard.

On August 30, 1973, a final judgment was entered, awarding appellees $61,458.00 as value of land and improvements and $14,193.44 as interest to final judgment, making a total of $75,651.44.

On August 30, 1973, the condemnor filed a motion for appeal.

On September 7, 1973, an order was entered allowing the appeal of condemnor.

On September 7, 1973, condemnor filed its appeal bond.

The records of the Clerk show the following:

```
"RECEIPTS:
August 25, 1969, payment into court ................ $62,890.00
May 11, 1970, payment into Court ................. 13,710.00
September 7, 1973, payment into Court .............. 16,489.57
Interest accrued while in savings account .......... 6,559.15
Total Receipts by Clerk .......................... $99,648.72.

DISBURSEMENTS:
To Southern Finishers, Inc., for judgment and interest  23,937.28
Taxes a lien per Clerk's report ....................   644.68
So H. G. Hill, Jr., et al, Trustees, for judgment and
   interest .......................................  75,006.76
Total disbursements by Clerk ......................  $99,588.72.
Cash on hand .........................................   60.00."
```

---

It will be noted from the above that the bulk of the funds necessary to pay the final judgment were in the hands of the Clerk prior to the trial and judgment, and that the final payment ($16,489.57) was made to the Clerk on Sept. 7, 1973, subsequent to the motion for appeal and on the same date as the order allowing appeal and the filing of appeal bond.

■ Other documents showing the date of disbursement to appellees and copies of receipts issued by the Clerk to condemnor, were attached to one of condemnor's motions filed in this Court, but were not properly certified to this Court as part of the record, hence cannot be considered on appeal.

On September 13, 1973, condemnor filed the following motion in the Trial Court:

"The petitioner, Metropolitan Development and Housing Agency, moves the Court for an order requiring defendants, H. G. Hill, Jr., et al., Trustees, to file with the Clerk a supplemental agreement to repay any surplus funds, as provided by Code Section 23–1526, which provides:

' . . . and the owner, if he so desires, make written request to said clerk to pay him, without prejudice to any of his rights said sum so deposited, provided the owner agrees to refund the difference between said sum and the final award in the case if the final award be less than the sum so paid into court or that a judgment be entered against him in said case for the difference. Such payment to the property owner or into Court shall in

no wise limit or fix the amount to be allowed under subsequent proceedings in said case and any further or additional sum that may be finally awarded in any subsequent proceedings in said case . . . .' "

Said motion then recites the record of the Clerk heretofore quoted, and continues:

"Said withdrawal by the Trustees being made while appeal proceedings were pending, and without a written agreement to repay for withdrawal of the sum of $75,006.76, petitioner moves that the Trustees be required to file a supplemental repayment agreement under Code 23–1526."

On October 15, 1973, said motion was overruled.

The date of payment of $75,006.76 to appellees is not substantiated by any evidence in this record, however the preceding motion is based upon the premise that payment was made to appellees prior to the date of the motion, September 13, 1973.

The motion to dismiss the appeal presents the legal question of the effect of payment of a judgment upon the right of appeal by the payer.

In Roberts v. Cantrell, 4 Tenn. (3 Haywood) 219 (1817), a non-resident was unable to perfect his appeal from a magistrate's decision and "deposited" the amount of the judgment against him with the magistrate to obtain a delay of execution. Subsequently, he sought review by certiorari, to which a demurrer was interposed. The Supreme Court overruled the demurrer and said:

"A *certiorari* for re-examination of the fact can not be used but in cases where an appeal could, and that is prevented by some means not under the plaintiff's control. An appeal for re-examination of the fact can not be allowed of after the judgment is satisfied. The complainant then has no remedy at law; and that is not by his default or neglect, for he could not, being a stranger, get sureties, though he made every effort to do so, and this circumstance distinguishes his case from that of one who has become without remedy at law by his own neglect. Then here is a case where an injured man, entitled to relief upon principles of natural justice, will be precluded therefrom, unless the Court can interpose. Shall this Court be precluded by technical rules which result in such consequences? No; rather break down the rules, if any such there be, than incur the consequence of manifest injustice. But indeed there is no rule of any sort opposed to this idea." 4 Tenn. p. 220.

The reasonable interpretation of the foregoing is:

"1. The defendant by unfortunate circumstances was forced to pay a magistrate's judgment to avoid execution.

2. His payment extinguished his right of appeal.

3. Therefore, he is entitled to relief by certiorari because he lost his right of appeal by blameless misfortune."

In this view of the opinion, the statement therein that "an appeal . . . cannot be allowed after the judgment is satisfied" is a necessary and indispensible ingredient of the decision reached and is therefore the law in Tennessee as declared by the Supreme Court and binding upon all other courts including this Court.

In Bond v. Greenwald, 51 Tenn. (4 Heisk) 453 (1871), the complainant obtained a decree for $10,000.00 from which complainant prayed and was granted an appeal, but appeal bond was never filed. Instead, complainant proceeded to enforce the decree for $10,000.00 and thereafter sought review by writ of error. The Supreme Court declined to dismiss the writ of error and said:

."He had a right to abandon the appeal, and we can not presume that he did so with a fraudulent purpose. After aban-

doning his appeal, his decree was in full force, and he had a perfect right to enforce it by the legal modes of obtaining satisfaction. We are unable to see how his proceeding to enforce his decree can be held, as matter of law, to be a waiver of his right afterwards to exercise the right of resorting to the writ of error, to have his own decree reviewed and reversed. He had indicated his dissatisfaction with its amount, by praying an appeal. In applying for this writ of error, within the time prescribed by law, he was in the exercise of a right secured by law to either party. He took the chances of the result of his writ of error —if he should fail in the Supreme Court to obtain any decree at all, or one less than he obtained below, he would have been compelled to refund. If he succeeded in obtaining a larger decree, he would make the difference. By the strict letter of the law he was in the exercise of his rights, and looking alone to the record, we are unable to see that he is not entitled to the decree which has been rendered in the case." 51 Tenn., pp. 468, 469

Attention is called to the fact that in *Greenwald* it was *not a defendant* who paid a judgment from which he sought relief, *but a complainant* who claimed all that was decreed to him *and more*. That is, his acceptance of *part* of that which he claimed did not preclude him from seeking the remainder of what he claimed. This is clearly distinguishable from the present case wherein petitioner paid into Court the amount of a judgment and now, on appeal, insists that it does not justly owe that which was paid. It is the difference between "taking part and seeking more" in *Greenwald* and "paying all and seeking refund" in the present case.

In Gaines v. Fagala (C.C.A.Tenn.1898), 42 S.W.2d 462, the decree for $1,325.42 was declared a lien on defendant's land and ordered a sale of same if necessary. The Chancellor refused a discretionary appeal, and defendant paid and satisfied the decree to avoid sale of his land. The Court of Civil Appeals overruled a motion to dismiss a writ of error and said:

"After the defendant to the original bill had paid off the judgment, and thus obeyed the decree below, there remained nothing further for the court to act on, and the case had been finally and conclusively disposed of. The decree, which, when first entered, was not final, because there still remained something further to be done by the court and its officers, became final when nothing further remained to be done. And we are of opinion that in such a case a writ of error may be properly prosecuted; otherwise the defendant would have been without further remedy or the right to have the action of the chancellor reviewed.

·       ·       ·       ·       ·       ·

"It would then seem that the only remedy defendant could have would be by the prosecution of writ of error, having paid the judgment, which she had the right to do in order to protect her property from sacrifice by sale, or to prevent the further accumulation of costs against her, which she might have to pay. The fact that she did so could not, we think, prejudice her rights to have a review of the decrees of the chancellor, to which she had excepted, and from which she prayed an appeal, but had not been allowed one. . . ." 42 S.W., pp. 462, 463

Thus, in *Fagala,* defendant was allowed a writ of error where appeal had been refused and defendant was thereby forced to pay to avoid a sale of her property.

In Peabody v. Fox Coal and Coke Co. (Tenn.C.C.A., 1899), 54 S.W. 128, a receivership case, a bank was erroneously decreed to pay $336.13 and in event of failure to pay, certain property of the bank was ordered sold to satisfy said decree. The bank paid the decree and took a "special appeal" from same. The Court of Chancery Appeals held that the payment of

the decree under protest in order to prevent the sale was not voluntary, hence the bank was not precluded from prosecuting its "special appeal."

In Wright v. Knoxville Livery and Stock Co. (C.C.A.Tenn.1900), 59 S.W. 677, a receivership case, there was a decree requiring payment of $8,149.00 within 60 days or, in default of payment, the sale of defendant's property. The Court held that payment of the decree to avoid sale of property under decree of court did not prevent the prosecution of a "special appeal."

■ From the foregoing review of Tennessee authorities, the law of this State appears to be that voluntary payment of a judgment does terminate the right of appeal, but that involuntary payment does not preclude appeal. It also appears that writ of error and certiorari have been allowed where the right of appeal was denied because of involuntary payment. The payment of a judgment after the expiration of appeal time, would not be a voluntary payment because of the availability of execution to enforce payment. However, if failure to perfect appeal and delay of payment was for the purpose of creating a false situation for involuntary payment, there is serious doubt that a payment under such circumstances would be so involuntary as to permit the prosecution of a writ of error in lieu of appeal.

In Burcham v. Carbide & Carbon Chemicals Corp., 188 Tenn. 592, 221 S.W.2d 888 (1949), the Supreme Court discussed the prosecuting of writs of error as an alternative to appeal and said:

"(2) The real question is, has the conduct of the appellant been such that he has, either expressly or impliedly, abandoned or waived his right to an appeal? The Court cannot say that a litigant shall be denied an appeal when he has a legal right thereto; but it can determine, and it is our duty to so determine, whether or not the appellant's conduct has been such that he has waived such

right." 188 Tenn., p. 599, 221 S.W.2d p. 890

Should there be any doubt that the rule stated in Roberts v. Cantrell, supra, over 150 years ago, is indeed the correct rule of law, adequate support may be had from authorities other than Tennessee Courts.

In 47 Am.Jur.2d, Judgments, § 992, p. 87, is found the following:

"§ 992. *Effect of payment and satisfaction.* The general rule is that actual payment of a judgment in full to a person authorized to receive it operates as a discharge of the judgment, whether the payment is made by a judgment debtor himself or by one of several judgment debtors, or by another in his behalf. . . ."

In 4 Am.Jur.2d, Appeal and Error § 260, p. 755, is found the following text:

"§ 260. *In general.*

In most jurisdictions, the question whether payment of a money judgment cuts off the payor's right of appeal depends on whether the payment is regarded as voluntary or as made under legal compulsion. . . ."

In 39 A.L.R.2d 155 is found a comprehensive analysis of decisions on the loss of appeal rights by payment. In the text of said article at p. 158 is found the following summary:

"As a general proposition, the question whether payment of a money judgment cuts off the payor's right of appeal depends upon whether or not the payment of the judgment is under legal compulsion. In some jurisdictions the rule prevails that voluntary payment of a judgment by the party against whom it is entered constitutes a waiver of the right to appeal, but that payment under coercion or duress is not such a waiver. In other jurisdictions even a voluntary payment does not, of itself, bar the right to appeal."

The last sentence of the above quotation is supported only by Reitano v. Yankwich, 38 Cal.2d 1, 237 P.2d 6, 39 A.L.R.2d 191 (1951), wherein, after plaintiff's suit was dismissed and pending appeal, the defendant's lawyer wrote a letter to plaintiff's lawyer demanding payment of costs and attorneys' fees and threatening execution. In response to said letter, defendant made payment. The California Supreme Court denied a motion to dismiss defendant's appeal because the payment was under threat of execution. Nevertheless, the Court said:

"[3, 4] Where the payment is voluntary this court has recently stated the rule: 'It is established in this state that the general rule that the voluntary satisfaction of a judgment deprives a party of the right of appeal is subject to certain other well-settled principles of law. * * * '" 237 P.2d, p. 7

It is apparent that (contrary to the rule in Tennessee) in California, the successful plaintiff has a right to execution in spite of an appeal. Therefore, absent the stay of supersedeas bond, the payment of any judgment in California must be regarded as being made under threat of execution, thus involuntary, and not prejudicial to appeal. If, however, execution is stayed by supersedeas, a payment is voluntary and does preclude appeal. In Culp v. Sandoval (1916), 22 N.M. 71, 159 P. 956, L.R.A. 1917A 1157, a party appealed from a judgment and executed a supersedeas bond which stayed and suspended all proceedings under such judgment and, prior to final determination of the appeal, the appellant voluntarily paid and satisfied the judgment. The New Mexico Supreme Court held that such payment amounted to a voluntary acquiescence in and recognition of the validity of the judgment and estopped appellant from further prosecution of the appeal, and said:

"We believe, from an examination of the authorities, that the correct determination of the question depends upon wheth-er the payment of the judgment is under legal compulsion; that is, assuming that payment is made prior to the issuance of execution, that such payment is regarded as having been compulsory by reason of the right existing in the judgment creditor to have issued execution and to have enforced payment at the time payment is made. It is well settled that:

'If a person voluntarily acquiesces in, or recognizes the validity of, a judgment, order, or decree, or otherwise takes a position which is inconsistent with the right to appeal therefrom, he thereby impliedly waives his right to have such judgment, order, or decree reviewed by an appellate court.' 3 C.J. p. 665, § 536.

*"The reason for the majority rule which recognizes the right of appeal, even though the judgment be paid without execution, is that, the judgment debtor having the power to coerce payment, the payment by the judgment creditor without execution is not a voluntary acquiescence in, or recognition of, the judgment.*

"Here the appellees were powerless to issue execution, or in any other manner to compel payment of the judgment, notwithstanding which the appellant voluntarily paid the full amount of the judgment. Under these circumstances we believe that the payment amounted to a *voluntarily acquiescence in and recognition of the validity of the judgment which precludes him from seeking further relief therefrom in this court;* hence we must hold that, where a party appeals from a judgment adverse to him in the district court and executes a supersedeas bond which stayed and suspended all proceedings under such judgment, and prserved the status quo pending the determination of the appeal and prior to a final determination of the appeal, such party voluntarily pays and satisfies such judgment; such payment amounts to a voluntary acquiescence in

and recognition of the validity of such judgment, and estops appellant from further prosecuting his appeal." 159 P., pp. 960–961 (emphasis supplied)

In Wachovia Bank & T. Co. v. Miller, 184 N.C. 593, 115 S.E. 161 (1922) (cited under said A.L.R.2d text) the defendant paid a justice of the peace judgment because he could not give bond to stay execution and his property would have been taken and sold if he had not paid. The Supreme Court of North Carolina remanded for an evidentiary hearing to establish the involuntary nature of the payment and said:

"Payment of a collectible judgment rendered by a court of competent jurisdiction is involuntary, and does not bar the appeal of the unsuccessful party below." 115 S.E. p. 163

On remand, a jury found the payment to be voluntary and the appeal was dismissed.

Said text also cites Grady v. Hansel, 57 N.D. 722, 223 N.W. 937 (1928), wherein the North Dakota Supreme Court refused to dismiss an appeal because payment was made to a sheriff armed with an execution and was therefore involuntary. The Court said:

"Were there no showing other than that the judgment was paid, we think the presumption would be that the payment was voluntary." 223 N.W. p. 938

From a study of said A.L.R.2d article, it appears that the courts have seldom dealt with the issue of the effect of a payment made while execution was unavailable (as in Culp v. Sandoval), but rather they have been principally concerned with cases where execution was available pending appeal and either *had* or *had not* issued at the time of payment.

On page 160 of said article, the following appears:

"[b]  *View that right of appeal is not lost.*

There is a line of cases supporting what sometimes has been called the weight of authority, or the majority rule, to the effect that payment of an enforceable judgment prior to issuance of execution does not, of itself, cut off the payor's right to appeal." 39 A.L.R.2d, p. 160

Thus, it is seen that the so-called "majority rule" is the rule that where execution is available but not issued, payment does not bar appeal (because payment is conceived to be involuntary). Almost every case annotated under the foregoing quotation was based upon a situation of compulsion such as Reitano v. Yankwich, supra, or upon a prior decision involving compulsion.

For example, the Alabama authorities originate in cases in which payment was made to avoid imprisonment or to avoid execution where no supersedeas bond could be made. The Arizona authority states, "one against whom a judgment is entered, if he fails to satisfy it, must expect to see his property sold." Illinois authorities either involve dictum or special circumstances of duress. Also, the latest Illinois citation states, "It is elemental that he cannot appeal from an order with which he has complied." The Kentucky authorities indicate that in that state a supersedeas bond is required to stay execution pending appeal, hence payment is under threat of execution if no supersedeas bond has been given. The Missouri authority involved payment to remove a lien on property. The New Jersey authority involved compliance with a peremptory writ. The New Mexico authority is Culp v. Sandoval, supra, wherein it is stated that where the judgment creditor has the right and power to issue execution, payment is not voluntary but coerced. The North Carolina case is Wachovia Bank & T. Co. v. Miller, supra, wherein the court recognized the rule that voluntary payments waive appeal and remanded for determination of voluntariness. In the North Dakota case, there was compliance to avoid enforcement of a man-

damus. In Oregon, the opinion states that execution was "likely," and a contray opinion is cited. In Tennesssee, the case of Wright v. Knoxville Livery and Stock Co., supra, is cited. In that case, payment was made after the period for appeal and pending a writ of error which did not suspend the judgment or stay execution. The Wisconsin authority is based upon payment to prevent the sacrifice of a stock of goods by sale under execution.

On page 163 of said A.L.R.2d article, the contrary view that appeal is lost is stated:

"[c]   *View that right of appeal is lost.*

Contrary to the rule stated in § 5 [b], supra, there is a line of authorities holding that payment of a judgment prior to issuance of execution cuts off the payor's right to appeal."   39 A.L.R.2d, p. 163

Under this quotation are listed cases from Colorado, Georgia, Iowa, Kansas, Louisiana, Michigan, Missouri, North Dakota, Oklahoma, Rhode Island, South Carolina, South Dakota and Texas.

In Knowles v. Harrington, 45 Colo. 346, 101 P. 403 (1909), the appeal was dismissed with the following comment:

"At the oral argument, in response to questions by the court, counsel for plaintiff in error admitted that some time after this suit was instituted in this court, and before the period of redemption had expired, the plaintiff in error paid the judgment and costs in full which he now seeks to have reviewed by this court. Under these conditions we shall decline to do so, there being no judgment to be reviewed. Courts are organized for the purpose of determining live questions between parties, who are interested or affected by such determination. Hunter v. Dickinson et al., 3 Colo.App. 378, 33 P. 932; Floyd v. Cochran, 24 Colo. 489, 52 P. 676; State Board of Equalization et al. v. The People, etc., 30 Colo. 271, 70

P. 416; 2 Cyc. p. 659; 3 Cyc. p. 188." 101 P. p. 403

In Hawthorne v. Hendrie, 50 Colo. 342, 116 P. 122 (1909), a trustee in bankruptcy paid a judgment to relieve the estate of a lien. The Colorado Supreme Court said:

"Defendant in error has received in payment of its lien the exact amount thereof, has credited the judgment therewith, and marked it 'satisfied.' It makes no difference that plaintiff in error, as he claims, 'felt coerced into compliance.' As said in American Book Co. v. State of Kansas, supra, 'a judgment usually has a coercive effect, and necessarily presents to the party against whom it is rendered the consideration whether it is better to comply or to continue the litigation. After compliance there is nothing to litigate.' The claim that the payment was not voluntary is not tenable. Payment, under the circumstances of this case, is not payment under duress. The most that can be fairly claimed in that respect is that the trustee, the court of bankruptcy, and the creditors all found it to the advantage of the latter to segregate the bankrupt's estate from that of the interest of others, or, in other words, to relieve that estate of a fixed lien thereon, to the end that the general creditors might presently receive that which was their due.

"The judgment of the court below, having been complied with, leaves nothing to litigate in this court. The plea in abatement is therefore sustained, and the writ of error dismissed."   116 P. p. 125

In Drury v. Cameron Barclay Co., 25 Ga.App. 15, 102 S.E. 373 (1920), the entire opinion is as follows:

"It appearing from the motion and the affidavit of counsel for the defendant in error that the judgment excepted to by the plaintiff in error has been paid by him, the questions raised by the bill of exceptions have become moot, and the writ of error must be dismissed."

In Leverette v. Kilpatrick, 29 Ga.App. 333, 115 S.E. 34 (1922), the entire opinion is as follows:

"It appearing by the affidavit of the attorney for the defendant in error, and also of a third person, that the plaintiff in error, since the filing of the bill of exceptions, paid and discharged the judgment which was rendered against him, and there being no denial or any showing to the contrary by the plaintiff in error, or his attorney who acknowledged notice thereof, the questions presented by the bill of exceptions become moot, and it is ordered that the writ of error be dismissed."

In Claxton Hdwe. Co. v. Odum, 33 Ga. App. 118, 125 S.E. 382 (1924), the entire opinion is as follows:

"It being made to appear to this court that the judgment and execution which is the foundation of this action has been fully paid and satisfied, there is no question for decision by this court, and the writ of error must be dismissed."

In A. E. Shorthill Co. v. Des Moines Dept. Str. Co., (Iowa) 151 N.W. 65 (1915), a judgment was rendered on June 2, 1911 and paid on July 25, 1911. The appeal was dismissed.

In Bates v. Nichols, 223 Iowa 878, 274 N.W. 32 (1937), the Court said:

"[1, 2] It will be observed that the judgment had been paid by the appellant prior to the service of the notice of appeal. The rule in reference to such matters varies in different courts of last resort in the several states of the Union. We feel we are bound by whatever the Supreme Court of Iowa has decided in these matters. The rule in this state seems to be that voluntary payment of a judgment by one against whom judgment is entered precludes an appeal, and we think this rule is settled against the appellant herein, and that it is supported by the following authorities: Borgalthous v. Farmers' & Merchants' Ins. Co., 36 Iowa, 250; Hintrager v. Mahoney, 78 Iowa, 537, 43 N.W. 522, 6 L.R.A. 50; Independent Dist. of Altoona v. Dist. Tp. of Delaware, 44 Iowa, 201; Bruner v. Myers, 203 Iowa, 570, 213 N.W. 217; Arnold v. Wapello County, 154 Iowa, 111, 134 N.W. 546; Isaacson v. Mason Motor Co. (Iowa) 157 N.W. 891; Plover Merc. Co. v. Peterson (Iowa) 111 N.W. 944; and Shorthill Co. v. Des Moines Dept. Store Co. (Iowa) 151 N.W. 65. These last three cases were per curiam opinions, and not reported in State Reports."

In Merriam Mortgage Co. v. St. Paul Fire & Marine Ins. Co., 97 Kan. 190, 155 P. 17 (1916) judgment was rendered on February 21, 1914 and paid on April 8, 1914. An appeal taken on August 19, 1914 was dismissed with the following comment:

"Having voluntarily paid the judgment the defendant cannot now question its justice or validity. Seaverns v. State, 76 Kan. 920, 93 P. 163; State v. Massa, 90 Kan. 129, 132 P. 1182. In the Seaverns Case previous decisions of this court discussing and applying the principle involved were collated and classified." 155 P. p. 17

In Tong v. Miller, 231 Mich. 356, 204 N.W. 108 (1925) defendant appealed, but made no supersedeas bond to stay the judgment pending appeal. Defendant paid the amount of the judgment to the Clerk, but the Clerk declined to pay the money to the plaintiff. The Trial Judge sustained the Clerk's decision and allowed additional time for a supersedeas bond. The Supreme Court of Michigan dismissed the appeal and said:

"By perfecting their appeal and giving a proper bond as the statute authorized, conditional on performance of the decree if affirmed, they would have stayed all proceedings to enforce any of its provisions, until final adjudication of the case on their appeal. While that right yet remained to them, they elected to pay the

adjudicated amount and comply with all other requirements of the decree, including payment of costs. Why they chose to pursue that course is left to conjecture, as no brief has been filed here in their behalf.

"The decree in effect makes payment of the money to the clerk payment to plaintiffs, only imposing on him the ministerial duty of paying it over to them when they present him an authenticated copy of the decree. His failure to comply with its mandate does not change plaintiffs' rights under the decree." 204 N.W. p. 110

Cases cited from other states mentioned above are to the same effect.

Appellant urges that the rule is different in condemnation cases, citing 40 A.L.R. 3rd 205 et seq., where the following is found:

"§ 2. *Background and summary*

It is generally provided by statute that a condemnor may take possession of land, or remain in possession thereof, following judgment and pending an appeal in such condemnation proceedings, by tendering the amount of the judgment to the landowner, or else by deposit of the amount of the judgment into court, or by execution of a security bond. It is on the basis of the wording employed in such statutes that courts generally make a determination as to whether a condemnor may take possession of the condemned property pursuant to such statutes, by making payment or deposit of the judgment, and yet maintain an appeal from said judgment.

"Thus, under general eminent domain statutes providing that a condemnor may, following the entry of judgment in a condemnation proceeding, pay the amount awarded to the owner of the condemned property, or deposit that amount into court or post bond therefor, and enter into possession of the condemned property, it has been held both that the condemnor's right to appeal

from the condemnation judgment is not thereby lost, and that such right is lost by virtue of waiver or on the ground that the cause thereby became moot, where possession of the property is also taken and payment is made to the owner.

"Where the condemnor deposits the amount awarded into court, or posts a bond therefor, there is similarly a difference of opinion among courts as to the right of the condemnor to thereafter appeal from the judgment, the view that the right to appeal is not thereby lost being sustained both on general grounds, and under express statutory provisions to that effect. It has also been held that the right to appeal is lost by virtue of the condemnor's act of depositing the amount awarded into court." 40 A.L.R. 3d p. 205.

As in the A.L.R.2d annotation cited supra, the A.L.R.3d annotation fails to recognize the critical and determinative factor of voluntariness or involuntariness of the payment made pending appeal. On page 206 of said annotation are listed cases under the following text:

"§ 3. *View that right to appeal retained*

The following cases discussing whether a condemnor may make payment to the landowner of a judgment rendered in condemnation proceedings and nevertheless maintain an appeal from such judgment are authority for the proposition that under rules or statutes permitting the taking of possession by a condemnor following payment of a judgment entered in condemnation proceedings the condemnor's right to appeal was not lost."

Said cases without exception involve statutes or constitutional interpretations which *require* the payment of the final judgment as a prerequisite to taking possession, thereby making payment *necessary* and therefore *involuntary*. As an example, in Illinois, where the condemnor has the option of posting bond or paying the judg-

ment, it was held that by selecting the option of payment, the condemnor waived appeal. County of Cook v. Malsa, 39 Ill.2d 376, 235 N.E.2d 598 (1968). Similarly, in Chicago S. F. & C. R. Co. v. Phelps, 125 Ill. 482, 17 N.E. 769 (1888) the Illinois Court held that payment did not waive appeal where the Trial Court erroneously refused a bond in lieu of payment, and payment was made to the property owner under a refunding agreement.

Likewise, cases cited in said article in support of allowing appeal where deposit or bond is posted are based upon the peculiar necessity to do so under the law of the jurisdiction.

In Tennessee, there is no compulsion for payment to obtain possession, for possession is awarded incident to the initial deposit under §§ 23–1507, 1509, 1510 T.C.A., and no further deposit or payment is required to obtain or retain possession.

Appellant relies upon a number of cases cited in said A.L.R.3rd article. An examination discloses that they do not support the position of appellant under Tennessee procedure (no payment of judgment required for possession).

In State ex rel. Morrison v. Jay Six Cattle Co., 85 Ariz. 220, 335 P.2d 799 (1959) it is stated that the Arizona statute permits the condemnor to take or retain possession pending appeal upon payment of the full amount of the judgment to the property owner. This provision is not the law of Tennessee.

In Gainesville v. Loggins, 224 Ga. 114, 160 S.E.2d 374 (1968) it was held that the general rule (that payment bars appeal) is not applicable to condemnation cases *because payment is required before taking possession* under the Georgia constitution. No such rule obtains in Tennessee.

In Madisonville H. & E. R. Co. v. Ross, 126 Ky. 138, 103 S.W. 330 (1907) and Kentucky Hydro-Electric Co. v. Woodard 216 Ky. 618, 287 S.W. 985 (1926) it is plainly stated that the Kentucky statute re-

quires payment of final judgment as a prerequisite to possession, hence payment, being under necessity, does not preclude appeal.

In New Orleans Terminal Co. v. Firemen's Charitable Assn., 115 La. 441, 39 So. 437 (1904) and State ex rel. Dept. of Highways v. Rownd, La.App., 119 So.2d 282 (1959), it is stated that the Louisiana Civil Code provides that possession pending appeal is allowed only upon payment of the judgment.

In Ft. Street Union Depot Co. v. Bacus, 92 Mich. 33, 52 N.W. 790, it is stated that the Michigan statute requires payment of the final judgment within 60 days or the proceeding will be deemed to be abandoned. To the same effect is Ft. Street Union Depot Co. v. Peninsular Stove Co., 103 Mich. 637, 61 N.W. 1007 (1895).

St. Louis v. Gerhart Realty Co., 328 Mo. 103, 40 S.W.2d 661 (1931) held that, under the Missouri Constitution, the city could not take possession of private property until payment of the judgment rendered in favor of the owner, hence payment did not bar appeal.

In State by Adams v. N. J. Zinc Co., 40 N.J. 560, 193 A.2d 244 (1963) it is stated that condemnor is entitled to possession upon payment of award and that the statute allows the condemnor to appeal after such payment.

In Re: New York W. S & B. R. Co., 94 N.Y. 287 (1884) the Trial Court ordered that, upon payment of its judgment the condemnor "may retain possession" to the exclusion of the owner who had been allowed partial use of the property.

In Re New York & H. R. Co., 98 N.Y. 12 (1885) the condemnor did not appeal, but the land owner was permitted to appeal in spite of having accepted payment *in lieu of possession.*

No authority has been cited or found which allows appeal to a condemnor which

without compulsion or necessity pays the judgment from which appeal is sought.

Appellant insists that dismissal of the appeal, if ordered, should be without prejudice to the right of review by writ of error.

As previously observed, writs of error have been allowed under unusual circumstances which render payment of the judgment involuntary, but no authority has been found for allowing writ of error where the right of appeal has been extinguished by *voluntary* payment of the judgment.

Appellant cites T.C.A. § 27–601, which reads as follows:

> "*27–601. Right to writ.*—A writ of error lies from the final judgment of the county court to the circuit or proper appellate court, and from the circuit and chancery court to such appellate court, *in all cases where an appeal in the nature of a writ of error would have lain.*" (emphasis supplied)

■ Since an appeal was waived by the payment, the writ of error was also waived.

§ 27–607 provides for allowance of writs of error where appeal has been dismissed for breach of appellate court rules, but no provision is made for cases where appeals are dismissed on other grounds.

Appellant cites Ward v. North American Rayon Corp., 211 Tenn. 535, 366 S.W.2d 134 (1962); Owen v. Holdway, 57 Tenn. App. 713, 425 S.W.2d 623 (1967); City of Paris v. Browning, 55 Tenn.App. 92, 396 S.W.2d 367 (1965) and Sanders v. Loyd, 51 Tenn.App. 49, 364 S.W.2d 369 (1960); however, in none of these cases was the right of appeal waived by payment of the judgment.

Appellant also relies upon Gaines v. Fagala, supra, however, as previously pointed out, in that case, defendant was refused the right of appeal and was forced to pay the judgment to avoid a sale of her property.

Other cases cited by appellant are devoid of any characteristic of waiver of appeal by payment of judgment.

Appellant also claims laches in moving to dismiss, citing Lewisburg & N.R. Co. v. Hinds, 134 Tenn. 293, 183 S.W. 985 (1915); however, this involved a full trial before the Circuit Court without complaint as to the bond on appeal from the award of the jury of view, and does not support appellant's appeal after payment.

A careful study of appellant's brief and authorities cited therein fails to disclose authority for allowing appeal or writ of error after voluntary payment of judgment.

Counsel for the condemnor stated at the bar of this Court that condemnor has adopted or expects to adopt as a permanent policy the payment of judgments pending appeal for the purpose of saving interest. At least one other case involving a similar payment by condemnor is under consideration by another section of this Court. Thus the decision in the present case will affect not only the rights of the parties to this case, but also the rights of numberless other property owners whose property will be taken from them by condemnor.

In addition, the decision in this case will affect the rights of successful plaintiffs whenever the defendant sees fit to pay the judgment pending appeal.

T.C.A. § 23–1507 authorizes housing authorities "at any time . . . before the entry of final judgment" to file a "declaration of taking" containing a description of the property being taken, a statement of the estate or interest taken, and an estimate of the just compensation for the taking.

T.C.A. § 23–1509 provides that upon the filing of the declaration of taking "and the deposit in court . . . of the amount

of the estimated compensation," title to the property shall vest in the Housing Authority.

This is the only statutory provision for a "deposit" by condemning housing authorities. Its obvious intent is to provide some semblance of "compensation" as required by the Constitution in the taking of private property. The deposit is a statutory condition precedent to the vesting of title under a "declaration of taking." It is self-evident that only one "declaration of taking" is necessary or proper in regard to a particular property taken from a particular owner, and that successive, duplicate "declarations of taking" of the same property from the same owners would be superfluous, unnecessary and beyond the intent of the statute.

Since a "deposit" is authorized only in connection with a "declaration of taking," and since only one "declaration of taking" is proper in the ordinary case, then it follows that only one "deposit" is authorized by the statute. Thus, only the first deposit by petitioner was authorized by statute, and subsequent "deposits" were irregular and unauthorized by statute. Particularly, the final payment of the entire unpaid portion of the judgment, not being tendered in connection with a "declaration of taking," was not a "deposit" within § 23–1509, supra, but was a payment. As such, it was not subject to the requirements of § 23–1510 as to refunding agreements; and the Trial Court correctly refused to require such from the owners.

Under the maxim, "Expressio unius est exclusio alterius," it must be presumed that the legislature intended that deposits should be made only under the conditions set out in the statute and not otherwise. 82 C.J.S. Statutes § 333, pp. 666 et seq.; 50 Am.Jur. Statutes, § 244, pp. 238 et seq.

Whatever the intentions, motives or benefits to be derived from successive additional deposits, they are not authorized by statute, and statutory provisions relating to the initial deposit under § 23–1509 cannot necessarily be claimed in respect to subsequent deposits or payments.

It has been insisted that the present situation is a result of a "mistake of law" by counsel for the petitioner-appellant, and that the petitioner should not be penalized for the error of counsel. It is, of course, a general rule of law that the courts will sometimes grant relief from a mistake of fact, but not a mistake of law. City of Shelbyville v. State ex rel. Bedford County, 220 Tenn. 197, 415 S.W.2d 139 (1967). See also many other decisions annotated in 9 Tenn.Dig., Equity § 7, p. 129 and 15A Tenn.Dig., Payment § 84, p. 473.

Petitioner cites Kansas City Southern Railway v. Boles, 88 Ark. 533, 115 S.W. 375 (1909) which is based upon a statutory provision of doubtful construction. From the foregoing discussion, it will be seen that the applicable statute is plain and unambiguous and leaves no doubt of construction.

There is a natural judicial inclination to rule with liberality in preserving the right of appeal. Nevertheless, the preservation of the right of appeal in the present case will have widespread and adverse effects which cannot be fully measured at this time.

Admittedly, the issue is not merely the right of appeal, but the right of a litigant to voluntarily pay funds into court whenever it appears to such litigant that it is to his advantage to do so and to withhold the same when payment does not benefit him.

To approve any such right in the defendant would produce varied problems to the courts. The first would be the problem of enforcing an appellate decision favorable to the petitioner. In the present case, if this Court should reduce the amount awarded to the defendant, then the question would immediately arise as to the procedure whereby petitioner should obtain a refund of the excess paid to the defendant

769

over and above the judgment of this Court. Should this Court award judgment for the refund; or should the cause be remanded for further proceedings; or should the refund be relegated to a separate, new proceeding filed for this purpose?

Another question which would arise would involve the allowance of interest upon the refund. If such interest should be allowed, what would be the situation of the respondents who had received payment and deposited same at a rate of less than six per cent pending appeal?

What would be the position of respondents if they had not withdrawn the money from the Clerk? Would the presence of the money in the hands of the Clerk disentitle respondents to interest pending appeal?

These and other questions will plague the courts if the position of the appellant is sustained. A much more orderly approach to the problem is to adhere to the rule that voluntary payment of a judgment waives or extinguishes appeal therefrom. Any departure from this rule should be by legislative enactment rather than judicial decree.

As previously indicated, the question under discussion was presented to another section of this Court in a separate case. Subsequently, and before final decision in this or the other case, the entire membership of this Court met en banc and heard further argument upon the question. As a result, an order has been entered declaring the decision of the entire Court en banc to be that the right of appeal or other form of review was extinguished in both cases by voluntary payment of the judgments after entry.

Accordingly, the motion to dismiss the appeal of petitioner must be sustained.

Nevertheless, the assignments of error, brief and argument of the petitioner-appellant have been examined with the resulting conviction that, even if the appeal were considered upon its merits, the judgment of the Trial Court would be affirmed.

The assignments relate, of course, to the amount of compensation allowed and the basis upon which the amount was determined. The principal grounds of complaint are related to the claimed enhancement of the value of the realty by certain improvements left in place when the premises were surrendered by the tenant. There is evidence in the record to support the finding of the Trial Judge. Under § 27–303, T.C.A., his judgment is presumed correct unless the evidence preponderates otherwise. The evidence does not preponderate otherwise.

One assignment includes a complaint as to amount of interest computed and included in the judgment, but this is not supported by any argument or explanation.

Another assignment complains of the failure of the Trial Judge to render certain findings of facts demanded by petitioner. Former § 20–1321, T.C.A., which provided for findings of fact, has been repealed. Rule 52.01, Rules of Civil Procedure, does provide for findings of fact, but there is no provision as to what facts must be found and what need not be found specially. Evidently, some discretion must reside in the Trial Judge in this regard. In the present case, the Trial Judge did file a memorandum stating his conclusions which were embodied in the final judgment. His failure to make findings as specifically demanded by petitioner is not deemed reversible error.

Thus, upon an informal review of the merits of the appeal, it does not appear that an injustice will result from the dismissal of petitioner's appeal under the principle which has been approved by the Court en banc and which is considered controlling.

Accordingly, the appeal of the petitioner-appellant, Metropolitan Development and Housing Agency and the appeal of the

respondent-appellant, Southern Finishers, Inc., are dismissed. Each of said appellants will pay the costs incident to its particular appeal, and any costs attributable to both appeals without distinction will be borne equally by said appellants.

The cause will be remanded to the Trial Court.

Appeals dismissed and remanded.

Court En Banc concurs.