Patsy Ann Smithson BRUCE,
Plaintiff–Appellee,

v.

William Edwin BRUCE, Jr.,
Defendant–Appellant.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Aug. 31, 1990.

Application for Permission to Appeal
Denied by Supreme Court
Nov. 19, 1990.

Maclin P. Davis, Jr., Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Nashville, for plaintiff-appellee.

S. Ralph Gordon, Nashville, for defendant-appellant.

OPINION

LEWIS, Judge.

Defendant William Edwin Bruce, Jr., has appealed from that part of the final decree of divorce [1] that approves and gives effect to the property settlement agreement (Agreement) executed by the parties on 3 March 1981, and from the division of the marital property acquired by the parties after the execution of the Agreement.

The pertinent facts are as follows:

The parties were married on 2 October 1964. Neither of the parties had any appreciable assets at the time of the marriage. The defendant had a four-year-old son by a previous marriage. A daughter was born to the parties in 1965. The plaintiff suffered a miscarriage in 1967 and a

---

**1.** The plaintiff Patsy Ann Smithson Bruce was awarded the divorce on the ground of adultery.

Defendant does not appeal from the award of divorce.

second daughter was born in 1968. In 1970 the parties adopted a son.

At the time of the marriage the defendant was employed as an automobile salesman and the plaintiff as a secretary. The defendant had "done work in music business ... as an entertainer at the time" of the marriage, but had not made "significant amounts of money" in the music business.

After moving to Nashville from Memphis in 1966, the defendant began work as a song writer and entertainer and the plaintiff secured a part-time job as a secretary at a publishing company. In the late sixties and early seventies, the defendant generated most of the parties' income with his song writing and singing.

The plaintiff has worked most of the time during the marriage except the three years during the seventies when she was attending Middle Tennessee State University and the time she took off when the parties' children were born.

The parties started several publishing companies in Nashville. The publishing companies served as a deposit for songs and operated to collect royalties for the songs to distribute to the writers and entertainers. The publishing companies owned many songs written by the defendant, as well as several songs co-authored by the plaintiff and defendant.

In the mid to late seventies, the defendant became more involved in the music and entertainment business. The plaintiff began to serve as defendant's manager and was at least partly responsible for his success in the music business during this time. Plaintiff was instrumental in having defendant hired as an actor in a nationally televised television series and in several national and local commercials. Defendant was also generating income during this time with his song writing and personal appearances. In addition to her managerial efforts, the plaintiff was primarily responsible for the financial aspect of the defendant's career, as well as their joint ventures, which eventually included ownership of some real estate.

In the late 1970's the parties' marriage began to deteriorate. In 1980 the defendant told the plaintiff that he was in love with Judy Doggett and that he wanted a divorce. The plaintiff begged the defendant not to leave. Sometime later the relationship between the parties began to get better, and they agreed to stay married. The parties wanted a settlement agreement so that if something happened to the marriage, they would not be influenced by outside parties when it came to splitting up the property for the benefit of the children. They had a settlement agreement prepared by Mr. Ralph Gordon, the defendant's attorney. The Agreement was executed by the parties on 3 March 1981.

The Agreement contains specific provisions for the division of property owned by the parties and for the payment of child support and alimony by defendant to plaintiff.

Paragraph 1 of the Agreement provides that "[t]his Agreement shall automatically become effective upon either the separation of the parties or the filing of a Complaint for Absolute Divorce." Paragraph 20 of the agreement provides: "In the event either party shall seek and be granted an absolute divorce, this agreement shall be incorporated in the final decree entered therein." Paragraph 21 provides that the agreement "is intended to be a final settlement of the property rights of the respective parties hereto and is a full discharge of Husband from all other obligations to support Wife, and a discharge from all other claims arising out of their marital relationship, except as stated herein, ... and this agreement applies to all property now owned by Husband and Wife, and any property that either of them may acquire in the future." Paragraph 26 provides that the wife will accept the provisions of the Agreement in full and final settlement of all claims and demands for alimony and that she "fully discharges Husband from all such claims and demands except as provided in this Agreement."

Paragraph 23 of the agreement provides: "The parties agree that in the event of a material change in the circumstances of

either party, they will review the terms and conditions of this Agreement and will negotiate in good faith to equitably adjust said terms and conditions."

On 22 November 1986 the parties separated permanently. The defendant began living with Ms. Doggett, and the plaintiff continued to live at the parties' home in Williamson County, Tennessee. Following the separation, plaintiff stopped serving as the defendant's manager. Instead, she devoted most of her time to Events Unlimited, a business formed prior to the parties' separation. This business began to prosper after the separation. Events Unlimited is owned by PAB, Inc. The plaintiff owned all of the stock of PAB, Inc. Defendant has had nothing to do with PAB, Inc., either before or after the separation.

At the time of the separation, the parties owned the farm where plaintiff and the children are living, four condominiums, and property at 1022 Sixteenth Avenue, South, in Nashville. All of these properties had mortgages encumbering them which required periodic payments, and both parties were liable on these mortgages.

In 1987 defendant deducted $54,610 as a loss from operating the farm where he was living with Judy Doggett but which was owned by defendant's mother. Even with this loss, defendant still had a taxable income of $38,639. From 1 January 1987 through 6 November 1987, defendant's gross income was slightly more than $130,-000. During 1988 defendant's income from work as an entertainer and song writer was $130,096.08. From 1 January 1989 through 20 February 1989 defendant's income as an entertainer and song writer was $19,797.51.

■ Defendant's first issue is: "The court erred in failing to make written findings of fact and conclusions of law."

Defendant argues that the trial court failed to comply with Tenn.R.Civ.P. 52.01 which provides in pertinent part as follows:

"In all actions tried upon the facts without a jury, and upon request made by any party prior to the entry of judgment, the court shall find the facts specially and shall state separately its conclusions of law thereon and direct the entry of the appropriate judgment." *Id.*

Defendant's counsel specifically requested the trial court to "make specific findings of fact and conclusions of law." However, the trial court responded that the request was too late because it came after the court rendered the decision. Defendant's counsel insisted that the court had not yet made a "full decision" and the court maintained that the request had come too late because it came after its determination of "all the significant issues that have to be set out."

The trial court was incorrect in its insistence that the defendant's request for findings of fact and conclusions of law had come too late. Tennessee Rule of Civil Procedure 52.01 provides that a party may request findings of fact at any time "prior to the entry of judgment." [2]

■ Findings of fact and conclusions of law rendered by the trial court "promote[ ] a just and speedy determination of the issues," *Murray Ohio Mfg. Co. v. Vines*, 498 S.W.2d 897, 902 (Tenn.1973), and facilitate appellate review by the courts and appellate case preparation by the parties. Tennessee Rule of Civil Procedure 52.01 was specifically designed to govern the procedure by which such findings of fact and conclusions of law should be requested and entered. Rule 52.01 includes the mandatory language that upon a timely request by any party the trial court "shall find the facts specially and shall state separately its conclusions of law thereon." *Id.* However, the failure of the trial court to render findings of fact and/or conclusions of law is not necessarily reversible error. *See Metropolitan Dev. and Housing Agency v. Hill*, 518 S.W.2d 754 (Tenn.App.1974). As

---

**2.** "A 'judgment' as used in the Tennessee Rules of Civil Procedure includes a decree on any order from which an appeal lies." *Anthony v. Kelly Foods, Inc.*, 704 S.W.2d 305, 308 (Tenn. 1986). In this case, entry of judgment was not made until several months subsequent to trial. However, under the facts here the trial court's failure to make oral or written finding of facts was harmless error. Tenn.R.App.P. 36(b).

stated in *Hill*, "Rule 52.01, Rules of Civil Procedure, does provide for findings of fact, but there is no provision as to what facts must be found and what need not be found specially. Evidently, some discretion must reside in the trial judge in this regard." *Hill*, 518 S.W.2d at 769.

▆ The greatest portion of this case hinged on the validity of the Agreement. In the event the Agreement was found to be valid, the only issues remaining for the trial court to address were whether there had been a material change in circumstances as contemplated by the Agreement and what would constitute an equitable division of the marital property not covered by the Agreement.

While the trial court did not make specific findings of fact or conclusions of law, the issues were sufficiently clear in this case to enable defendant to determine which version of the facts the court believed from the content of the court's final judgment and the comments by the court from the bench at the conclusion of the evidentiary hearing.

Additionally, the trial court requested that both parties submit their proposals regarding a division of the marital property not covered by the Agreement. Following the receipt of those proposals, the trial court made specific findings regarding the division of the marital property acquired by the parties subsequent to the execution of the Agreement.

While we do not look with favor upon a trial court's refusal to respect a timely request to issue findings of fact and conclusions of law, that refusal under the circumstances here does not constitute reversible error. Tenn.R.App.P. 36(b).

Defendant's first issue is without merit.

Defendant, by his second issue, contends that "[t]he trial court erred in finding that there had not been a change in the circumstances of the parties since the execution of the settlement agreement."

The Agreement executed by the parties on 3 March 1981 specifically provides that it "shall automatically become effective upon either the separation of the parties or the filing of a Complaint for Absolute Divorce." The separation occurred on 22 November 1986 and the Agreement became effective on that date.

A property settlement agreement between a husband and wife is

within the category of contracts and is to be looked upon and enforced as an agreement, and is to be construed as other contracts as respects its interpretation, its meaning and effect. Being such the courts are restrained from disregarding it and annulling it. And when such contract is submitted to a court of equity for interpretation and enforcement, it must be construed by the rules of interpretation and remedies to be applied as any other contract.

*Matthews v. Matthews*, 24 Tenn.App. 580, 593, 148 S.W.2d 3, 11–12 (1940) (citations omitted).

Courts are not "at liberty to annul or change or amend a contract entered into by and between parties capable of contracting simply upon the ground that the judges may be of opinion that a better agreement would or should have been arrived at." *Id.* at 595, 148 S.W.2d at 13 (citations omitted).

The burden of proof is upon the defendant to show a material change of circumstances. That material change of circumstances must have occurred either between the time the Agreement was entered into on 3 March 1981 and the date it became effective or between the date the Agreement became effective on 22 November 1986 and the date of trial.

Paragraph 23 of the Agreement provides that "[i]n the event of a material change in the circumstances of either party, they will review the terms and conditions of this Agreement and will negotiate in good faith to equitably adjust said terms and conditions." The contract provides that the parties will negotiate. In the event of a failure or refusal of the parties to negotiate, the defendant was at liberty to show that there had been a change in circumstances between the execution of the Agreement and the date it became effective. The defendant was also at liberty to prove a material change of circumstances between the

date the Agreement became effective on 22 November 1986 and the date of trial.

There is proof in this record regarding the circumstances of the parties in 1981, 1988 and 1989. However, there is no evidence of the circumstances of the parties at the time the Agreement became effective on 22 November 1986. The defendant's failure to present such evidence prevents us from making a determination of whether or not there has been a material change in circumstances which would require a modification of the Agreement.

This issue is without merit.

■ In his third issue, the defendant insists that "[t]he court erred in finding that the settlement agreement was not an agreement to agree in the future and, therefore, unenforceable."

The provision to which the defendant refers as evidencing an agreement to agree in the future is that portion of paragraph 23 which provides that "[t]he parties agree that in the event of a material change in the circumstances of either party, they will review the terms and conditions of this Agreement and will negotiate in good faith to equitably adjust said terms and conditions."

The essence of the defendant's argument is that the entire Agreement should be found void because paragraph 23 constitutes an "agreement to agree" and that, since paragraph 23 is an essential part of the Agreement, the entire Agreement is invalid.

The clear language of paragraph 23 shows that it is an agreement that, upon the happening of a certain event, the parties would "negotiate in good faith to equitably adjust [the] terms and conditions" of the Agreement. It is not an agreement to agree in the future. A "contract may provide for modification, and contracts which provide for subsequent changes therein are not unusual." 17 Am.Jur.2d *Contracts* § 465 (1964).

In any event, the plaintiff testified that she attempted to negotiate with the defendant to adjust the terms and conditions of the contract but that defendant refused to negotiate and told her that the contract was void. Defendant denies this. However, the trial court obviously believed the plaintiff's version of the facts. We defer to the findings of the trial court with regard to the credibility of a witness' testimony. *Town of Alamo v. Forcum–James Co.*, 205 Tenn. 478, 483, 327 S.W.2d 47, 49 (1959).

This issue is without merit.

■ The defendant's fourth issue is: "The court erred in the distribution of the parties' marital property acquired after the execution of the Settlement Agreement."

Nowhere in the defendant's argument does he insist that the distribution of the marital property acquired after the execution of the Agreement was inequitable. Defendant merely insists that the trial court's decision and the manner in which it was rendered was arbitrary, capricious, and not in keeping with the standards set forth in Tenn.Code Ann. § 36–4–121.[3] He does not, either in his brief or at oral argument, set forth facts to support this argument.

The record shows that, after the court had made its ruling regarding the validity of the Agreement, counsel for the parties agreed that they would submit a list of the marital property acquired by the parties subsequent to the execution of the Agreement and a proposed division of that property in order to aid the court in making an equitable division of the after-acquired property. Each of the parties submitted a list of the property and a proposed division to the court and the court then set forth a division of the marital property in the final decree.

The comparison of the "Wife's Proposal for Relief" with the "Final Judgment" confirms that the trial court incorporated the vast majority of "Wife's Proposal for Relief" into its "Final Judgment." However,

---

**3.** Tennessee Code Annotated § 36–4–121 provides for the distribution of marital property and *sets forth the* criteria for the court to use in making an "equitable distribution of marital property."

this alone does not show that the trial court erred in exercising its discretion. This Court will not reverse discretionary decisions of the trial court "[u]nless it affirmatively appears that [the] trial court has improperly used, or manifestly abused, [its] discretion to the great injustice and injury of the party complaining...." *Plantt v. Plantt*, 28 Tenn.App. 79, 88, 186 S.W.2d 338, 342 (1944) (citation omitted). The husband has failed to show that the division of the after-acquired marital property was inequitable. We therefore affirm the trial court's ruling in regard to the division of the marital property acquired after the execution of the Agreement.

This issue is without merit.

The judgment of the trial court is affirmed and the cause remanded to the trial court for the collection of costs and any further necessary proceedings. Costs are taxed to the defendant.

CANTRELL and KOCH, JJ., concur.