# IN THE COURT OF APPEALS OF TENNESSEE
# AT KNOXVILLE
September 30, 2014 Session

## BARBARA LYNN HORINE v. JAMES ALAN HORINE

**Appeal from the Probate Court for Cumberland County**
**No. 2011PF2376     Larry Michael Warner, Judge**

---

**No. E2013-02415-COA-R3-CV-FILED-NOVEMBER 24, 2014**

---

In this divorce appeal, Wife appeals the trial court's rulings with regard to the calculation of child support, the award of alimony, the requirement that she reimburse Husband for one-half of the mortgage payments on the marital home until the home is sold, and the trial court's refusal to order an income assignment to secure Husband's child support obligation. We vacate the trial court's judgment with regard to child support and alimony, and remand for the entry of an order containing appropriate findings of fact and conclusions of law. We affirm the trial court's order requiring Wife to reimburse Husband for the mortgage payment. However, we reverse the trial court's refusal to order an income assignment to secure the child support obligation. Affirmed in part, vacated in part, and reversed in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Affirmed in Part; Vacated in Part; and Reversed in Part**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the Court, in which D. MICHAEL SWINEY, J., and KENNY ARMSTRONG, J., joined.

Charles Craig Northcott, Tullahoma, Tennessee, for the appellant, Barbara Lynn Horine.

Kevin D. Poore, Crossville, Tennessee, for the appellee, James Alan Horine.

## OPINION

## Background

Plaintiff/Appellant Barbara Lynn Horine ("Wife") and Defendant/Appellee James Alan Horine ("Husband") were married on October 9, 1969 and remained married for forty-three years. They had two children, who are now adults. In addition, the parties adopted their biological grandson ("the child"), who is now twelve years old. Husband is currently sixty five years old, and Wife is currently sixty three years old. In the summer of 2011, the parties separated. Wife filed a complaint for legal separation in Coffee County on August 11, 2011. Husband filed a complaint for divorce in Cumberland County on September 7, 2011. Wife's complaint was transferred and consolidated with the Cumberland County matter.

A trial occurred on June 3, June 4, and June 13, 2014. Much of the trial testimony focused on the parties' work histories. Both parties testified that Husband was the primary wage earner during the parties' marriage, though Wife worked some during the marriage. Husband has a bachelor's degree in Aeronautical Studies, and a master's degree in counseling. He had a twenty year career in the United States Army; he retired in 1990 with the rank of major. From 1990 to 1992, he worked for RainSoft National Brand, a company that installs and repairs home water treatment systems. In 1992, he accepted a position with the State of Tennessee in the Department of Children's Services as a guard, and he was promoted to correctional counselor in 1993. While Husband worked for the State, he received approximately $41,000 annually. Husband continued as a counselor for the State until 2012, when the state's facility closed. At trial, Husband testified that he currently holds a part-time position as drug and alcohol counselor working approximately twenty hours per week. However, he testified that he holds a specialized counseling license, which gives him the title of Licensed Alcohol and Drug Abuse Counselor. At the time of trial, he received $19.75 per hour for twenty hours per week from Corizon, Inc. for his counseling services. He also received $2,626.00 per month from his military retirement account and $1,021.00 from the State from his pension.

Wife testified that she completed the eleventh grade and obtained her GED, but that her education and career had not been a priority during the parties' marriage. Instead, Wife testified that her focus was on on the parties' two children and Husband's military career, which caused the parties to move frequently. Once the children became school-aged, in the late 1970s and early 1980s, Wife testified that she had several "odd jobs," none of which, she contended, paid substantially more than minimum wage. Indeed, Mother's testimony shows that over a period of a single year, she worked for a doctor, a veterinarian, WalMart, and a midwife. From 1997 until 2002, she worked as a medical transcriptionist, but she testified that she had trouble performing this job because of hearing loss. Wife testified that the parties experienced a brief separation in 2002 when Husband "declared his love for another woman." This led to a six month separation. Upon reconciling, Wife never returned to work. Instead, Wife testified that when the child was taken into the home, it was agreed that Wife

-2-

would focus on child-rearing, just as she had done for the parties' other children.

At trial, Wife testified that she had no income. Wife testified that she has several physical ailments that prevent her from working, including hearing loss, a bladder condition, and joint issues. In contrast, Husband did not testify as to any physical conditions that would impact his ability to be employed.

Both parties testified to the value of various property jointly owned by the parties, including the marital home, which they both valued at approximately $400,000.00. The home was secured by a mortgage for approximately $155,000.00. At the time of trial, Husband was living in the home, while Wife was residing with her adult son in Coffee County with the minor child. Wife testified that she needs considerable funds in order to buy her own home, which arrangement she believes is in the best interest of the child. Wife further testified that her expenses well exceed her income and requested that the trial court award her alimony, in addition to her marital portion of Husband's retirement benefits and child support. Both parties admitted to having affairs during the marriage, though Wife's was many years prior to the ultimate breakdown of the relationship.

The trial court made an oral ruling at the conclusion of trial. A written order memorializing the trial court's ruling was entered on September 23, 2013. The divorce was awarded to Wife on the ground of Husband's inappropriate marital conduct "with specificity to general attitude, but not to any specific acts." Wife was named the primary residential parent of the child and the parties were ordered to agree to a visitation schedule, otherwise the trial court would order standard visitation.[1] Husband and Wife were awarded the personal property in their possession. Wife was also awarded one-half of Husband's monthly military retirement pay, his monthly State of Tennessee retirement pay, and his 401K. Wife was also awarded the parties' dogs and the personal property relating to them. Husband and Wife were each awarded various other personal property not at issue in this appeal.

Husband was awarded possession of the marital home, pending its sale. However, the trial court ruled that if the home was not sold by June 13, 2014, the property was to be auctioned by an agreed upon auction company or the court.[2] Regardless of the method of sale, the proceeds of the sale were to be paid out in the following order:

---

[1] Neither party takes issue with the trial court's custody and parenting time decisions. Indeed, from the record it appears that both parties have done an admirable job placing the child's best interest above their own throughout the divorce, with the trial court noting that "it could not state how impressed it was with both parents."

[2] Although this date has passed, the record contains no information regarding whether the property was, in fact, sold.

1.    To pay the costs of the sale.
2.    To pay the remaining joint indebtedness of the parties.
3.    To reimburse Husband for one-half of his mortgage payments from the date of the trial court's order through the date of the sale of the property.
4.    Twenty-five percent of the remaining balance to be awarded to Wife as "lump sum alimony."
5.    The remaining balance of the proceeds were to be divided equally among the parties.

With regard to child support, the trial court imputed income to both parties. Husband's monthly income for child support and alimony purposes was set as "the larger of Husband being imputed income at 40 hours per week at minimum wage ($1256.66) or the amount that he is currently earning at his employment ($1711.67)." The trial court imputed income to Wife equivalent to a twenty hour per week minimum wage job, or $628.33 per month. In addition, the trial court included in Wife's monthly income the $600.00 per month that Wife estimated she would be eligible to receive from the Social Security Administration. Finally, the trial court ruled that both parties' incomes for purposes of child support would include the retirement pay each party was receiving pursuant to the divorce decree. As a result of these income findings, Husband was ordered to pay $520.00 per month in child support. The trial court declined to award Wife periodic alimony and ordered that each party would pay their respective attorney's fees.

Wife filed a timely notice of appeal. Although Husband contends that the trial court held a hearing after its initial oral ruling in order to clarify the prior ruling, the record contains no record of any post-trial motions filed by either party, nor does it contain a transcript of any post-trial hearing. Additionally, it appears that this purported hearing to clarify the oral ruling occurred prior to the entry of the final decree in this case.

**Issues Presented**

Wife raises several issues on appeal, which are taken from her appellate brief:

1.    Whether the trial court erred in its determination of the parties' ability to earn for purposes of child support and alimony.
2.    Whether the trial court erred in the form and amount of alimony awarded to Wife.
3.    Whether the trial court erred in awarding Husband reimbursement for the mortgage payments on the marital home after the time of divorce.
4.    Whether the trial court erred in its refusal to order

child support to be withheld from Husband's
military retirement pay.

## Analysis

This case was heard by the trial court sitting without a jury. Accordingly, we will review the trial court's findings of fact *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). No presumption of correctness, however, attaches to the trial court's conclusions of law and our review is *de novo*. *Blair v. Brownson*, 197 S.W.3d 681, 684 (Tenn. 2006) (citing *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000)). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *4215 Harding Road Homeowners Ass'n v. Harris*, 354 S.W.3d 296, 305 (Tenn. Ct. App. 2011); *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000). Where the trial court does not make findings of fact, there is no presumption of correctness and we "must conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999).

## Child Support and Alimony

Wife's first two issues concern the trial court's decisions with regard to its calculation and award of alimony and child support. Because the trial court's rulings are not supported by required findings of fact or conclusions of law, we vacate the judgment of the trial court with regard to its calculation of both child support and its award of alimony, and remand for the entry of an order containing appropriate findings.

The initial determination of a child support order is governed by Tennessee Code Annotated Section 36-5-101. Tennessee Code Annotated Section 36-5-101(e)(1)(A) instructs the trial court to apply the child support guidelines, as set forth in the rules and regulations of the Department of Human Services, as a rebuttable presumption in determining the amount of child support. *See* Tenn. Comp. R. & Regs. § 1240-2-4-.01. Even with the adoption of the child support guidelines, trial courts retain a certain amount of discretion in their decisions regarding child support, which decisions we review under an abuse of discretion standard. *Richardson v. Spano*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005). A trial court abuses its discretion when it has applied an incorrect legal standard or has reached a decision which is against logic or reasoning that caused an injustice to the party complaining. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001).

"The fairness of a child support award depends on an accurate determination of both parents' gross income or ability to support." *Massey v. Casals*, 315 S.W.3d 788, 795 (Tenn.

Ct. App. 2009). In most cases, a parent's earning capacity or ability to earn income is equivalent to the parent's gross income. *Id.* Sometimes, however, a parents' actual income is not indicative of their true earning capacity. Under the Child Support Guidelines, the trial court may impute income under certain limited circumstances. *See Goodman v. Goodman*, No. W2011-01971-COA-R3-CV, 2012 WL 1605164, at \*4 (Tenn. Ct. App. May 7, 2012); *see also* Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(2)(i)(I–III). The Guidelines provide that: "[i]mputing additional gross income to a parent is appropriate . . . [i]f a parent has been determined by a tribunal to be willfully and/or voluntarily underemployed or unemployed." Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(2)(i). *Goodman*, 2012 WL 1605164, at \*4. The determination of whether a parent is willfully underemployed or unemployed is a fact-intensive inquiry. "A determination of willful and/or voluntary underemployment or unemployment is not limited to choices motivated by an intent to avoid or reduce the payment of child support. The determination may be based on any intentional choice or act that adversely affects a parent's income." Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2)(ii)(I). In making its determination, the trial court must consider the parent's past and present employment and determine whether the party's choice to accept a lower paying job was reasonable and made in good faith. *Willis v. Willis*, 62 S.W.3d 735, 738 (Tenn. Ct. App. 2001). Additionally, the court should take into consideration the parent's education, training, and ability to work. Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2)(iii)(II). Whether a parent is willfully and voluntarily underemployed is a question of fact, and we afford the trial court considerable discretion in making its determination. *Willis*, 62 S.W.3d at 738.

However, to trigger this portion of the child support guidelines and "[t]o calculate a child support award based on earning capacity rather than actual net income, **there must be a threshold finding that the obligor parent is willfully and voluntarily underemployed or unemployed**." *Goodman*, 2012 WL 1605164, at \*4. (quoting *Marcus v. Marcus*, No. 02A01-9611-CV-00286, 1998 WL 29645, at \*3 (Tenn. Ct. App. Jan. 28, 1998) (emphasis added)); *see also* *Kendle v. Kendle*, No. M2010-00757-COA-R3-CV, 2011 WL 1642503, at \*3 (Tenn. Ct. App. Apr. 28, 2011) (citing Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(2)(i)(I)). Thus, in order to impute income to a parent based on voluntary underemployment or unemployment, the trial court must make a threshold finding that the parent is willfully underemployed or unemployed.

Here, the trial court failed to make such a finding. Instead, the trial court merely stated with regard to Husband's income that: "The Husband's income shall be calculated at the larger of the Husband's being imputed income at 40 hours per week at minimum wage or the amount that he is currently earning at his current level." With regard to Wife's income, the trial court found: "The Wife shall be imputed income of minimum wage at 20 hours per week and $600[.00] per month in Social Security." The trial court further ruled that both parties'

-6-

retirement benefits would be included in the child support calculation. Accordingly, the trial court imputed income to both parties at the same wage, despite the fact that Husband has a Master's Degree and a long history of employment, whereas Wife has only obtained her GED and has been out of the workforce for a great number of years. *See* Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2)(iii)(II, III) (requiring that the court take into account both the parties' "education, training, and ability to work" and the fact that a parent may have acted as a stay-at-home parent during the marriage in order to determine whether a parent is willfully underemployed or unemployed). More importantly, the trial court found that income should be imputed to both parties without making any finding that either party was voluntarily underemployed or unemployed. This Court has previously held that to impute income without such a finding is in error. *See Goodman*, 2012 WL 1605164, at *4 (reversing imputation of income); *see also Vinson v. Vinson*, No. W2012-01378-COA-R3-CV, 2013 WL 4856777, at *10 (Tenn. Ct. App. Sept. 2013). Under the circumstances of this case, the appropriate remedy is to vacate the judgment of the trial court and remand for reconsideration of the child support award, focusing on whether either party proved that the other was voluntarily underemployed or unemployed. *See Massey*, 315 S.W.3d at 796 (noting that the burden is on the party seeking to show willful underemployment).

The trial court's failure to make any findings to support the imputation of income to Wife also hinders this Court's review of the trial court's alimony ruling. Here, the trial court declined Wife's request for periodic alimony, but awarded Wife alimony *in solido* out of the balance of the sale of the marital home. The Tennessee Supreme Court has consistently recognized that trial courts in Tennessee have broad discretion to determine whether spousal support is needed and, if so, to determine the nature, amount, and duration of the award. *See, e.g., Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011); *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000). Because a trial court's "decision regarding spousal support is factually driven and involves the careful balancing of many factors," *Gonsewski*, 350 S.W.3d at 105 (footnote omitted), the role of an appellate court is not to second guess the trial court or to substitute its judgment for that of the trial court, but to determine whether the trial court abused its discretion in awarding, or refusing to award, spousal support. *Id.*; *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999) ("If a discretionary decision is within a range of acceptable alternatives, we will not substitute our judgment for that of the trial court simply because we may have chosen a different alternative."). "An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Id.* (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010)). In determining whether the trial court abused its discretion, an appellate court "should presume that the [trial court's]

decision is correct and should review the evidence in the light most favorable to the decision." ***Gonsewski***, 350 S.W.3d at 105–06.

Tennessee recognizes four distinct types of spousal support: (1) alimony *in futuro*, (2) alimony *in solido*, (3) rehabilitative alimony, and (4) transitional alimony. Tenn. Code Ann. § 36-5-121(d)(1). Alimony *in futuro* is a form of long-term support. An award of alimony *in futuro* is appropriate when the economically disadvantaged spouse cannot achieve self-sufficiency and economic rehabilitation is not feasible. ***Gonsewski***, 350 S.W.3d at 107. Alimony *in solido*, another form of long-term support, is typically awarded to adjust the distribution of the marital estate and, as such, is generally not modifiable and does not terminate upon death or remarriage. ***Id.*** at 108. By contrast, rehabilitative alimony is short-term support that enables a disadvantaged spouse to obtain education or training necessary to become self-reliant following a divorce. ***Id.*** Where economic rehabilitation is unnecessary, transitional alimony may be awarded. Transitional alimony assists the disadvantaged spouse with the "transition to the status of a single person." ***Id.*** at 109 (internal quotation marks omitted).

Wife argues that the trial court erred in awarding her alimony based on the proceeds of the sale of the marital home. According to Wife, the proceeds of the sale are uncertain and may not be sufficient to meet Wife's needs. Wife submits that her income is insufficient to meet the needs of both herself and the parties' child. Further, Wife points out that Husband has full control of the marital home pursuant to the terms of the divorce decree and "thus [is] responsible for maintaining the home in a suitable condition for showing to potential buyers." Wife also argues that Husband has an incentive to prevent the home from selling, whereby he may purchase the home for less than market value at auction. Thus, Wife argues that the alimony awarded was not reasonable. Instead, Wife argues that she is entitled to an award of alimony *in futuro*. Wife contends that alimony *in futuro* is appropriate because she in unable to earn income due to her own medical conditions, she has long been out of the work force due to caring for her older children and Husband's frequent moves, and it is undesirable for her to begin working again due to her current obligation to raise the parties' child. Furthermore, Wife argues that Husband's earning capacity is far above her own. Accordingly, she submits that she should have been awarded alimony *in futuro*.

The income of the parties is an integral consideration in the award of alimony. In determining alimony, the trial court is directed to consider several factors:

> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> (2) The relative education and training of each party, the ability

and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

* * *

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage; . . . .

Tenn. Code Ann. § 36-5-121(i) (outlining a number of additional factors to consider in awarding alimony, including the marital property awarded to each party, the duration of the marriage, the age of the parties, the separate assets of the parties, the standard of living during the marriage, and the tax consequences to each party). Indeed, Tennessee Courts repeatedly held that the most important factor in an award of alimony is the obligee's need and the obligor's ability to pay. *See, e.g.*, *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011); *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004); *Robertson v. Robertson,* 76 S.W.3d 337, 342 (Tenn. 2002); *Burlew v. Burlew*, 40 S.W.3d 465, 472 (Tenn. 2001). Thus, in order to determine an appropriate alimony award, the trial court must consider the income of the parties, as well as a number of other factors.

Nothing in the trial court's written order or in its oral ruling from the bench indicates that the trial court considered any of the above factors in deciding to award Wife alimony *in solido* and deny her request for alimony *in futuro*. Tennessee Rule of Civil Procedure 52.01 provides:

In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein.

Prior to July 1, 2009, trial courts were only required to make specific findings of fact and conclusions of law "upon request made by any party prior to the entry of judgment." *See Poole v. Union Planters Bank N.A.*, No. W2009-01507-COA-R3-CV, 337 S.W.3d 771, 791

(Tenn. Ct. App. 2010) (noting the amendment). However, the current version of Rule 52.01 requires the court to make these findings regardless of a request by either party. *Id.* This Court has previously held that the requirement to make findings of fact and conclusions of law is "not a mere technicality." *In re K.H.*, No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009). Instead, the requirement serves the important purpose of "facilitat[ing] appellate review and promot[ing] the just and speedy resolution of appeals." *Id.*; *White v. Moody*, 171 S.W.3d 187, 191 (Tenn. Ct. App. 2004); *Bruce v. Bruce*, 801 S.W.2d 102, 104 (Tenn. Ct. App. 1990). "Without such findings and conclusions, this court is left to wonder on what basis the court reached its ultimate decision." *In re K.H.*, 2009 WL 1362314, at *8 (quoting *In re M.E.W.*, No. M2003-01739-COA-R3-PT, 2004 WL 865840, at * 19 (Tenn. Ct. App. April 21, 2004)).

Generally, the appropriate remedy when a trial court fails to make appropriate findings of fact and conclusions of law is to "vacate the trial court's judgment and remand the cause to the trial court for written findings of fact and conclusions of law." *Lake v. Haynes*, No. W2010-00294-COA-R3-CV, 2011 WL 2361563, at *1 (Tenn. Ct. App. June 9, 2011). However, this Court has indicated that we may "soldier on" with our review despite the trial court's failure to make sufficient findings of fact and conclusions of law, in certain limited circumstances:

> On occasion, when a trial judge fails to make findings of fact and conclusions of law, the appellate court "may 'soldier on' when the case involves only a clear legal issue, or when the court's decision is 'readily ascertainable.'" *Hanson v. J.C. Hobbs Co., Inc.*, No. W2011-02523-COA-R3-CV, 2012 WL 5873582, at * 10 (Tenn. Ct. App. Nov. 21, 2012) (quoting *Simpson v. Fowler*, No. W2011-02112-COA-R3-CV, 2012 WL 3675321, at *4 (Tenn. Ct. App. Aug. 28, 2012)).

*Pandey v. Shrivastava*, No. W2012-00059-COA-R3-CV, 2013 WL 657799, at *5 (Tenn. Ct. App. Feb. 22, 2013).

In this case, the issue of alimony does not involve a clear legal issue, nor is the trial court's reasoning readily ascertainable. Furthermore, as previously discussed, an award of alimony must consider the incomes of the parties. Because the trial court erred in imputing income to both parties without a finding of willful underemployment or unemployment, the trial court's alimony award rests on an income finding that may change upon remand. Because the parties' incomes may change upon remand, the issue of alimony may also require reconsideration. Under these circumstances, we decline to "soldier on" with review in this case. Accordingly, the alimony award is vacated and remanded for reconsideration in

accordance with this Opinion.

## Mortgage Payments

Wife next argues that the trial court erred in requiring her to reimburse Husband for one-half of the mortgage payments while Husband lives in the marital home prior to its sale. In support of her assignment of error, Wife puts forth a rather novel argument: because Husband and Wife are tenants in common of the property after the dissolution of the marriage, the fact that Husband retains sole possession of the home until it is sold results in an ouster of Wife. According to Wife's brief:

> Clearly, seeking and obtaining a court order excluding a cotenant, Wife in this case, from the property is an ouster as defined by our Supreme Court. Under law that has been well settled for over one hundred (100) years, Husband must pay rent to Wife (his cotenant) for his exclusive use and possession of the property. It is also true that he is entitled to a reduction in the rental rate for one-half (½) of the mortgage payments made during the period. However, without proof that the mortgage payment exceeds the rental rate, he is not also entitled to compensation from Wife from her portion of the net proceeds from the sale of the marital home.
>
> Husband submitted no proof during the trial of the fair rental rate much less that the mortgage payment exceeded such. Therefore, Husband has failed in his burden to show that he is entitled to any compensation for the mortgage payment. Accordingly, Wife submits that the Trial Court erred in ordering her to reimburse Husband for half of the mortgage payments made after the trial date.

From our review of the record, however, an ouster argument was never raised in the trial court. It is well-settled that an issue may not be raised for the first time on appeal. *See **Barnes v. Barnes***, 193 S.W.3d 495, 501 (Tenn. 2006). Although Wife submits in her reply brief that she was not required to raise this argument in the trial court, as it was Husband's burden to show the value of the property, we disagree. If Wife wanted the trial court to consider the rental value of the property, rather than the undisputed payment Husband must make on the mortgage, it was her burden to raise this argument in the trial court. Because she did not, this issue is waived and the trial court's decision in this regard is affirmed.

## Income Assignment

Wife finally argues that the trial court erred in failing to order a wage assignment to secure the award of child support. According to Tennessee Code Annotated Section 36-5-501(a)(1):

> For any order of child support issued, modified, or enforced on or after July 1, 1994, the court **shall** order an immediate assignment of the obligor's income, including, but not necessarily limited to: wages, salaries, commissions, bonuses, workers' compensation, disability, **payments pursuant to a pension or retirement program**, profit sharing, interest, annuities, and other income due or to become due to the obligor.

(Emphasis added). There is no dispute in this case that the trial court declined to order an income assignment of Husband's military retirement pay to secure the child support order. Husband argues, however, that Wife waived this issue by her failure to specifically request an income assignment at trial. In addition, Husband argues that the trial court had good cause for declining to order income assignment in this case.

This Court has previously held that the General Assembly's use of the word "shall" in a statute indicates that the obligation is mandatory, rather than discretionary. *See **Bellamy v. Cracker Barrel Old Country Store, Inc.***, 302 S.W.3d 278, 281 (Tenn. 2009) (quoting ***Stubbs v. State***, 216 Tenn. 567, 393 S.W.2d 150, 154 (1965) ("When 'shall' is used . . . it is ordinarily construed as being mandatory and not discretionary.")). Thus, Tennessee Code Annotated Section 36-5-501(a)(1) provides that the trial court must order an income assignment, absent specific statutory exceptions outlined below. Nothing in the statute places a duty on the obligee parent to request an income assignment; the duty is on the court. Accordingly, Wife's failure to specifically raise this issue until a post-trial proceeding is not fatal to her argument.

Husband next argues that the trial court had good cause[3] for declining to order income assignment, and that, consequently, this case falls within the exceptions outlined in Tennessee Code Annotated Section 36-5-501(a)(2)(A), which provides:

> Income assignment under this subsection (a) shall not be required:

_____

[3] Specifically, Husband argues that an income assignment in this case may prevent him from timely paying the parties' mortgage, which would negatively impact both parties' financial futures. Further, Husband notes that there are no allegations that he has ever failed to pay any ordered or requested support.

(i) If, in cases involving the modification of support orders, upon proof by one party, there is a written finding of fact in the order of the court that there is good cause not to require immediate income assignment and the proof shows that the obligor has made timely payment of previously ordered support. "Good cause" shall only be established upon proof that the immediate income assignment would not be in the best interests of the child. The court shall, in its order, state specifically why such assignment will not be in the child's best interests; or

(ii) If there is a written agreement by both parties that provides for alternative arrangements. Such agreement must be reviewed by the court and entered in the record.

Husband's argument fails in several respects. First, there is no dispute that no written agreement exists providing for an alternative child support arrangement. In addition, there are no findings of fact or conclusions of law contained in the trial court's written order or oral ruling that would support a finding of good cause that income assignment is not in the child's best interest. Although Husband contends that the trial court made certain oral findings to support its decision in a post-trial hearing, it is undisputed that no written findings exist to support the trial court's action. It is well-settled that a court speaks through its orders, not through written transcripts. *See* ***Cunningham v. Cunningham***, No. W2006-02685-COA-R3-CV, 2008 WL 2521425, at *4–5 (Tenn. Ct. App. June 25, 2008) (citing ***Broadway Motor Co. v. Fire Ins. Co.***, 12 Tenn. App. 278, 280 (1930)). Moreover, the record contains no transcript of the post-trial hearing. Accordingly, the purported remarks of the trial court simply cannot be considered by this Court. More importantly, Section 36-5-501(a)(2)(A)(i) only appears to apply when a party is seeking a modification of a previously ordered child support award. From our review of the record, the child support award contained in the final decree of divorce was the first child support award ordered by the trial court. Accordingly, this proceeding did not involve a modification of a support order. Under these circumstances, Tennessee Code Annotated Section 36-5-501(a)(1) clearly requires the trial court to order income assignment. The trial court's failure to do so, therefore, is error.

**Conclusion**

The judgment of the trial court is affirmed in part, reversed in part, and vacated in part. This cause is remanded to the trial court for all further proceedings as are necessary and are consistent with this Opinion. Costs of this appeal are taxed one-half to Appellant Barbara Lynn Horine, and her surety, and one-half to Appellee James Alan Horine, for all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE