# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
Submitted On Brief, July 8, 2015


## IN RE A.C.S. ET AL.


### Appeal from Juvenile Court for Chester County
### No. 2014JV1266      Larry F. McKenzie, Judge

---

### No. W2015-00487-COA-R3-PT – Filed September 23, 2015

---

This is a termination of parental rights case. The trial court terminated Appellant/Mother's parental rights on the grounds of: (1) abandonment; (2) substantial non-compliance with the permanency plan; (3) persistence of conditions; and (4) severe child abuse. We vacate the termination of Mother's parental rights on the grounds of substantial non-compliance with the permanency plan and failure to support. However, the remaining grounds for termination of Mother's parental rights are met by clear and convincing evidence, and there is also clear and convincing evidence that termination of Mother's parental rights is in the best interest of the children. Therefore, we affirm the termination and remand for further proceedings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court is Vacated in part; Affirmed in part; and Remanded


KENNY ARMSTRONG, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Lena Beal-Cavness, Lexington, Tennessee, for the Appellant, M.S.

Lanis L. Karnes, Jackson, Tennessee, for the Appellees, J.R. and K.R.

### MEMORANDUM OPINION[1]

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse

# I. Background

The children at issue in this case, A.C.S. and E.C.R.S.,[2] were born to M.S. ("Mother" or "Appellant") in April of 2006 and October of 2008, respectively. In May of 2009, the Tennessee Department of Children's Services ("DCS") investigated the childrens' living conditions after receiving a report indicating that Mother had been using crack cocaine and that she and the children were without a stable residence. On May 10, 2009, Mother was arrested for domestic assault against her own mother. On May 12, 2009, DCS confirmed by report that Mother was using crack cocaine and did not have stable housing. Due to Mother's drug use, lack of a stable home, and the possibility of severe child abuse, the children were removed from Mother's custody and placed in foster care with the Appellees. On May 19, 2009, DCS filed a petition to adjudicate dependency and neglect and for change of custody. In an order dated May 21, 2009, the trial court placed the children in the custody of J.R and K.R. ("Appellees"). On June 15, 2009, the trial court appointed Mr. Carl Seely as Guardian *ad Litem* for the children.

On September 29, 2009, the trial court found, by clear and convincing evidence, that the children were dependent and neglected. The trial court found that Mother had been using crack cocaine and that she and the children were without a stable residence. Evidence presented at the dependency and neglect hearing showed that A.C.S. had twenty-six rotten teeth and suffered from developmental and learning disabilities. According to medical records and testimony presented at the dependency and neglect hearing, E.C.R.S. tested positive for cocaine and exhibited delayed bone growth and failure to thrive; these conditions required E.C.R.S. to be treated at LeBonheur Children's Hospital after his removal from Mother's custody. The trial court did not adjudicate severe child abuse at the initial dependency and neglect hearing and, instead, reserved the issue.

On April 7, 2010, Mother filed a motion for review, alleging that she was drug-free and seeking to regain custody of the children. The trial court denied Mother's motion, but she was granted two hours of supervised visitation per week by order of June 10, 2010. The trial court also ordered a home study of Mother's residence and required her to submit to an alcohol and drug assessment and random monthly drug tests. As a result of the home

---

or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2] In termination of parental rights cases, it is the policy of this Court to remove the names of minor children and other parties in order to protect their identities.

study, which was conducted from April of 2010 to July of 2010, DCS found Mother's home to be hazardous and an immediate threat to the health and safety of the children due to a lack of a fire extinguisher, non-functioning smoke detectors, a lack of child-proof safety locks, no safety wall outlet covers, and insufficient cooling inside the home.

On August 25, 2011, after Mother's failure to make reasonable efforts to improve her living situation and her relationship with the children, the trial court relieved DCS of its obligation to make reasonable efforts to reunite Mother with the children. According to the Child and Family Team Meeting Summary from August 25, 2011, Mother had refused to accept assistance for job, education, and mental health counseling, and she stopped visiting the children in April of 2011. During this time, the children remained in Appellees' custody.

Regarding the issue of severe child abuse, which had been reserved, the trial court reviewed the June 8, 2011 evidentiary deposition of Dr. Lisa Piercey, a child maltreatment and pediatrics expert. Dr. Piercey found that the level of crack cocaine found in E.C.R.S.'s system was high enough to suggest direct ingestion. Dr. Piercey considered E.C.R.S.'s condition to be a result of severe child abuse. Accordingly, in an order entered on September 2, 2011 in the dependency and neglect proceedings, the trial court found E.C.R.S. to be a victim of severe child abuse perpetrated by Mother.

On October 24, 2012, Mr. Carl Seely, the children's first Guardian *ad Litem*,[3] filed a Petition for Termination of Parental Rights, naming Mother and the children's biological fathers as respondents.[4] Although Mother was incarcerated in the Chester and Henderson County jails from January of 2013 to July 23, 2013 for violation of probation and aggravated burglary, she answered the petition on February 20, 2013. During her incarceration, Mother completed the Teen Challenge program, parenting classes, and some GED testing. She was also was baptized during that time period. On August 1, 2013, nine days after being released from jail, Mother tested positive for amphetamines. She is now on probation until July of 2018.

---

[3] Mr. Seely also represented Petitioners when this particular petition was filed. On September 10, 2013, Mother filed a petition to relieve Mr. Seely as Guardian *ad Litem* and counsel for the petitioners, citing a conflict of interest. On November 12, 2013, the trial court granted Mother's motion, relieving Mr. Seely of his duties as both Guardian *ad Litem* for the children and as counsel for the Appellees. The trial court found that Mr. Seely did not commit any wrongdoing by his actions.

[4] On March 17, 2014, the trial court terminated the rights of both biological fathers by default order for failure to respond. Mother is the only party to this appeal.

On July 25, 2013, Mother filed a petition to establish visitation. On February 5, 2014, the trial court denied Mother's petition for visitation and found that her testimony and prescription history were inconsistent. Mother is prescribed hydrocodone and Flexeril for back pain, and she is prescribed Lexapro and Wellbutrin for depression. The trial court was concerned by both her hydrocodone use and her failure to seek drug treatment despite her history of abusing crack cocaine.

The trial court heard the petition for termination of parental rights on December 17, 2014. Although Mother was given specific information regarding the date, time, and location of the hearing, she appeared almost two hours late. Allegedly, Mother had mistakenly gone to her lawyer's office in Lexington, Tennessee. She claimed that her transportation left, leaving her no way to get to the courthouse. The trial court initially stated that it would enter default judgment against Mother because of her failure to timely appear, however, upon Mother's arrival in the courtroom, the trial court allowed the parties to present proof. Lack of transportation has been a constant issue for Mother. Mother testified that she does not have a driver's license and has not seen the children since 2010 or 2011. Due to her erratic appearance upon arrival at the hearing, the trial court granted an oral motion to have Mother immediately drug tested. The drug screen was negative.

Mother testified that since May of 2009, she has lived in only one place for longer than six months. For example, upon release from jail, Mother lived in two locations, both of which required extensive repairs. She lived in a house she allegedly bought from her brother. Mother also lived in an apartment, which she testified needs repairs before it is habitable. After she left the apartment, she moved into a house with a former inmate she met in jail. Prior to the filing of the petition, Mother lived with various family members, including her mother, with whom she has had several physical altercations. At the time of the hearing, Mother testified she was living with a woman with whom she had been incarcerated. Mother also testified that she received $696 every month from Social Security as well as $130 in food stamps, and that was her only income. Mother testified that she believes she can support both herself and the children on her monthly income.

Appellees testified that the last time Mother visited the children was in 2011 and that the last time Mother contacted them to see the children was in August of 2012. During cross-examination, Mother claimed that she attempted to visit with the children multiple times, but the trial court found her testimony "not credible in any shape, form or fashion." Appellees also testified that Mother had not paid any support since 2009. However, they said that she brought food and "little knickknacks" for the children when she visited them in 2010.

Appellees testified that the children have shown improvement in all areas of their lives since coming into their custody. According to medical and school records, the

children are drug-free, developing properly, and succeeding in school.  Appellees stated that the children never ask about their mother.   K.R. testified that A.C.S. believes Mother is his sister.  Appellees stated that the children consider Appellees to be their parents. The trial court found that "it would be devastating beyond repair for them to leave the [Appellees] and that it would cause the minor children great harm to be removed from the [Appellees] due to the stability they have there and as they know no other parents."

By order of March 10, 2015, the trial court terminated Mother's parental rights on grounds of (1) abandonment; (2) substantial non-compliance with the permanency plan; (3) persistence of conditions; and (4) severe child abuse.  The trial court also found, by clear and convincing evidence, that termination of Mother's parental rights was in the children's best interests.   Mother appeals.

## II. Issues

The sole issue for review is whether the trial court erred in terminating Mother's parental rights.

## III. Standard of Review

Under both the United States and Tennessee Constitutions, a parent has a fundamental right to the care, custody, and control of his or her child.  *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash–Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Thus, the state may interfere with parental rights only if there is a compelling state interest. *Nash–Putnam*, 921 S.W.2d at 174-75 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). Our termination statutes identify "those situations in which the state's interest in welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought."   *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)).   A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases.  *Santosky*, 455 U.S. at 769.  Consequently, both the ground(s) for termination and the best interest inquiry must be established by clear and convincing evidence.  Tenn. Code Ann. § 36-3-113(c)(1); *In re Valentine*, 79 S.W.3d at 546.   Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable .

5

. . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id.*

In light of the heightened standard of proof in termination of parental rights cases, a reviewing court must modify the customary standard of review as set forth in Tennessee Rule of Appellate Procedure 13(d). As to the trial court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). Furthermore, when the resolution of an issue in a case depends upon the truthfulness of witnesses, the trial judge, who has had the opportunity to observe the witness and his or her manner and demeanor while testifying, is in a far better position than this Court to decide those issues. *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). The weight, faith, and credit to be given to any witness' testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *See Whitaker*, 957 S.W.2d at 837; *see also Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997). Accordingly, appellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary. *See Humphrey v. David Witherspoon, Inc*., 734 S.W.2d 315, 315–16 (Tenn. 1987); *Bingham v. Dyersburg Fabrics Co., Inc.,* 567 S.W.2d 169, 170 (Tenn. 1978); *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

## IV. Analysis

We note at the outset that although the trial court's order contains clear conclusions of law, it does not contain sufficient factual findings to support those conclusions. In this regard, the trial court's order fails to comply with Tennessee Rule of Civil Procedure 52.01, which requires that "[i]n all actions tried upon the facts without a jury, the court *shall find the facts specially* and shall state separately its conclusions of law…" *Id.* (emphasis added). This Court has previously held that the requirement to make findings of fact and conclusions of law is "not a mere technicality." *In re K.H.,* No. W2008–01144–COA–R3–PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009). Instead, the requirement serves the important purpose of "facilitat[ing] appellate review and promot[ing] the just and speedy resolution of appeals." *Id.*; *White v. Moody,* 171 S.W.3d 187, 191 (Tenn. Ct. App. 2004); *Bruce v. Bruce,* 801 S.W.2d 102, 104 (Tenn. Ct. App. 1990). "Without such findings and conclusions, this court is left to wonder on what basis the court reached its ultimate decision." *In re K.H.,* 2009 WL 1362314, at *8 (quoting *In*

6

*re M.E.W.,* No. M2003–01739–COA–R3–PT, 2004 WL 865840, at * 19 (Tenn. Ct. App. Apr. 21, 2004)).

Generally, the appropriate remedy when a trial court fails to make appropriate findings of fact and conclusions of law is to "vacate the trial court's judgment and remand the cause to the trial court for written findings of fact and conclusions of law." *Lake v. Haynes,* No. W2010–00294–COA–R3–CV, 2011 WL 2361563, at \*1 (Tenn. Ct. App. June 9, 2011). However, this Court "may 'soldier on' when the case involves only a clear legal issue, or when the court's decision is 'readily ascertainable.'" *Hanson v. J.C. Hobbs Co., Inc.*, No. W2011-02523-COA-R3-CV, 2012 WL 5873582, at \*10 (Tenn. Ct. App. Nov. 21, 2012) (quoting *Simpson v. Fowler*, No. W2011-02112-COA-R3-CV, 2012 WL 3675321, at \*4 (Tenn. Ct. App. Aug. 28, 2012)). Although the trial court's order in this case does not make enough specific findings of fact to facilitate appellate review, after reviewing the record, we have determined that the trial court's decision is "readily ascertainable." Because the record is thorough and the trial court's decision is readily ascertainable with regard to several of the grounds for termination, we elect to "soldier on" as possible and resolve this case on the merits, especially in light of the fact that the case involves minor children, whose living arrangements have been unsettled for many years.

### A. Default Judgment

Appellant's brief argues that the trial court erred in granting default judgment against her for her failure to arrive at court on time. While the trial court did state on the record that it would enter default judgment against Mother, its order does not indicate that it entered a default judgment. Instead, the trial court's order decided the case on the merits. A trial court "speaks through its order, not the transcript." *In re Adoption of E.N.R.*, 42 S.W.3d 26, 31 (Tenn. 2001).

"A judgment must be reduced to writing in order to be valid. It is inchoate, and has no force whatsoever, until it has been reduced to writing and entered on the minutes of the court, and is completely within the power of the judge or Chancellor." *Cunningham v. Cunningham*, No. W2006-02685-COA-R3-CV, 2008 WL 2521425, \*5 (Tenn. Ct. App. June 25, 2008) (quoting *Broadway Motor Co., Inc. v. Fire Insurance Co.*, 12 Tenn. App. 278, 280 (1930)). When there is a discrepancy between the trial court's oral ruling and its written ruling, unless the oral ruling is incorporated into the written ruling, then this Court will only review the written ruling. *See Cunningham*, 2008 WL 2521425, at \*5. Accordingly, we treat this appeal as it was decided on the merits. Therefore, Appellant's challenge to the trial court's oral ruling that it would enter default judgment is moot.

## B. Grounds for Termination of Mother's Parental Rights

As noted earlier, the trial court relied on three statutory grounds in terminating Mother's parental rights: (1) abandonment; (2) substantial noncompliance with the permanency plan; and (3) persistence of conditions. *See* Tenn. Code Ann. § 36-1-113(g)(1), (2), (3). The Tennessee Supreme Court has instructed this Court to review every ground relied upon by the trial court to terminate parental rights in order to prevent "unnecessary remands of cases." *In re Angela E.*, 303 S.W.3d 240, 251 n.14 (Tenn. 2010). Accordingly, we will review each of the three grounds.

### 1. Abandonment by Willful Failure to Visit and Support

Tennessee Code Annotated Section 36-1-113(g)(1) provides that termination of parental rights may be based upon the ground of "[a]bandonment by the parent or guardian, as defined in § 36-1-102. . . ." Tennessee Code Annotated Section 36-1-102(1)(A)(i) defines abandonment, in relevant part, as follows:

> (i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent or parents or a guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that a parent or parents or a guardian or guardians either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child.

*Id.*

Failure to visit or support a child is "willful" when a person is aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so. *In re Audrey S.*, 182 S.W.3d 838, 864 (Tenn. Ct. App. 2005). Willfulness depends upon the actor's intent, and intent is seldom capable of direct proof. *Id.* Therefore, the trier-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct. *Id.* "Whether a parent failed to visit or support their child is a question of fact. Whether a parent's failure to visit or support constitutes willful abandonment, however, is a question of law." *In re Adoption of Angela E.*, 402 S.W.3d 636, 649 (Tenn. Ct. App. 2013) (citing *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007)). Tennessee Code Annotated Section 36-1-102(1)(H) provides that "every parent who is eighteen (18) years of age or older is presumed to have knowledge of a parent's legal obligation to support such parent's child or children."

In the instant case, the trial court found that "there were missed opportunities with

respect to visitation. . . ." Appellant failed to visit the children in the four months preceding the filing of the Appellees' petition. Although she was granted supervised visitation in 2010, the Appellees' testimony established that Mother stopped visiting the children in 2011. Afterwards, Mother's only contact with the Appellees was a token gesture in August of 2012, requesting that the children be brought to meet her at some future date. This token gesture, however, does not negate her long history of non-visitation. According to both Appellant and Appellees' testimony, Appellant had Appellees' contact information, but simply did not use it. Appellees testified that they have not prevented Appellant from visiting the children. Because Appellant was given multiple opportunities to visit the children but failed to do so, we conclude that her failure to visit was willful.

With regard to the Appellant's failure to support, the trial court found that Appellant had the ability to earn an income to care for the children but failed to do so. As discussed above, however, the trial court did not make enough specific factual findings in its order to support its conclusion that the Appellant failed to support her children. While we have elected to soldier on in reviewing this case, the record does not provide us with many facts regarding this particular ground. Therefore, the trial court's conclusion with regard to this ground is not "readily ascertainable." Accordingly, we vacate the trial court's termination of Appellant's parental rights with respect to the ground of failure to support.

### 2. Abandonment by Failure to Establish a Suitable Home and Lack of Concern

The trial court found "by clear and convincing evidence that grounds for termination of her parental rights exist due to. . . her abandonment by failure to establish a suitable home." Tennessee Code Annotated Section 36-1-102(1)(A)(ii) further defines "abandonment" for purposes of termination of parental rights as follows:

> (ii) The child has been removed from the home of the parent or parents or a guardian or guardians as the result of a petition filed in the juvenile court in which the child was found to be a dependent and neglected child, as defined in § 37-1-102, and the child was placed in the custody of the department or a licensed child-placing agency, that the juvenile court found, or the court where the termination of parental rights petition is filed finds, that the department or a licensed child-placing agency made reasonable efforts to prevent removal of the child or that the circumstances of the child's situation prevented reasonable efforts from being made prior to the child's removal; and for a period of four (4) months following the removal, the department or agency has made reasonable efforts to assist the parent(s) or guardian(s) to establish a suitable home for the child, ***but that the parent(s) or guardian(s) have made no reasonable efforts to provide a suitable home and have***

> *demonstrated a lack of concern for the child to such a degree that it appears unlikely that they will be able to provide a suitable home for the child at an early date.*

*Id.* (emphasis added).

This Court has previously held that "in determining whether grounds for termination of the parental rights of a biological parent are established, both the trial court and this Court must look to the evidence of the parent's past actions, rather than the parent's future aspirations." *In re Adoption of Logan A.S.*, No. W2009-02661-COA-R3-PT, 2010 WL 3984712, at *8 (Tenn. Ct. App. Oct. 12, 2010). As discussed above, the children were taken from Mother's custody in 2009 and were adjudicated dependent and neglected, in part, because of Mother's failure to provide a stable home. At the termination hearing, Mother described the residences she has lived in since her children were removed from her custody, all of which she knew were uninhabitable before moving into them. Mother admitted during her testimony that, since May of 2009, she has only lived in one residence for longer than six months. Just prior to her incarceration in 2013, Mother testified that she moved into a home that was "full of mold." Mother was aware of the mold problem prior to moving into this home.

After Mother was released from prison in 2013, she moved into a rental home. Mother admits that she was aware this property had a broken front door, a broken back door, and a broken refrigerator and that she moved in despite these deficiencies. Mother lived at this location for two months before moving in with a woman with whom Mother was incarcerated. Mother does not know why her roommate was incarcerated. Mother stated that she plans for the children to reside with her at this house until the repairs on the doors and refrigerator are completed at her apartment. Mother testified that she eventually wants to move back into a house she bought from her brother in January of 2014, however, she acknowledged that this house needs extensive repairs and that she is not currently residing at that house.

The trial court found that "there is no likelihood that the minor children, A.C.S. and E.C.R.S., could ever return to [Appellant]." From the record, it does not appear that Mother is able to establish stable housing, and we conclude that there is clear and convincing evidence in the record to support the trial court's finding that Mother has failed to establish a suitable home.

In addition to the housing issues, the trial court also found that Mother has shown a lack of concern for the children. In 2011, DCS was relieved of its obligation to make reasonable efforts toward reunification— the sole reason being Mother's failure to put forth reasonable efforts to avail herself of the services offered. Mother does not appeal the

10

trial court's decision to relieve DCS of its usual obligation to provide reasonable efforts. However, the record clearly establishes that in the four months preceding the filing of the petition, Mother did not have a stable residence and did not visit the children.  In addition, Mother's failure to arrive on time for the termination hearing demonstrates a continued lack of concern for the children.  The trial court found that, "even though this should be the most important day of her life, she did not appear in Court at the appointed time, made excuses why she wasn't there, she did not arrive in Court until 10:45 a.m. . . . and the Court finds this series of events 'incredible.'"  Based on the totality of the circumstances, we conclude that there is clear and convincing evidence in the record to support the trial court's finding that Mother has abandoned these children by failing to establish a suitable home, and by demonstrating a continuing lack of concern for them.

### 3. Substantial Noncompliance with the Permanency Plan

Mother's parental rights were also terminated on the ground of failure to substantially comply with her responsibilities as set out in the permanency plans. Tennessee Code Annotated Section 36-1-113(g)(2) states that the permanency plan must be entered "pursuant to the provisions of title 37, chapter 2, part 4."  Section 37-2-402(9) defines "Plan" or "Permanency Plan" as "a written plan for a child placed in foster care with the department of children's services or in the care of an agency as defined in subdivision (3) and as provided in § 37-2-403. . . ."  Section 37-2-402(3) defines "agency" as "a child care agency, as defined in title 71, chapter 3, part 5. . . regardless of whether such agency is licensed or approved, and includes the department of children's services."  Further, Section 71-3-501(4) defines "child care agency" as:

> a place or facility, regardless of whether it is currently licensed, that is operated as a family child care home, a group child care home, a child care center, or a drop-in center, as those terms are defined in this part, or that provides child care for five (5) or more children who are not related to the primary caregiver for three (3) or more hours per day….

*Id.*

This Court has repeatedly held that when a party "is relying on substantial noncompliance with the permanency plan as a ground for terminating parental rights, it is essential that the plan be admitted into evidence."  *In re A.J.R.*, No. E2006-01140-COA-R3-PT, 2006 WL 3421284, at *4 (Tenn. Ct. App. Nov. 28, 2006) (citing *Dep't of Children's Services v. D.W.J.*, No. E2004-02586-COA-R3-PT, 2005 WL 1528367, at *3 (Tenn. Ct. App. June 29, 2005)).  Furthermore, this Court has held that it is "inappropriate to terminate parental rights based on the ground of substantial noncompliance. . . where DCS did not take the child into State protective custody, did not

11

create a 'permanency plan' that satisfied the requirements of the statute, did not obtain court approval of any permanency plan. . . ." **In re Kaleb N.F.**, No. M2012-00881-COA-R3-PT, 2013 WL 1087561, at *21 (Tenn. Ct. App. Mar. 12, 2013).

In the instant case, although the trial court provided requirements for Appellant to regain custody through a court order dated June 10, 2010, those requirements do not fall within the definition of "permanency plan" found in Tennessee Code Annotated Section 37-2-402(9). Furthermore, the record does not contain a copy of any document satisfying the statutory requirement set out above for a permanency plan. We cannot determine whether Mother failed to comply with the permanency plan if we do not have access to the plan as part of the appellate record. Therefore, we reverse the trial court's termination of Mother's parental rights on the ground of failure to substantially comply with the permanency plan under Tennessee Code Annotated Section 36-1-113(g)(2).

### 4. Persistence of Conditions

Tennessee Code Annotated Section 36-1-113(g)(3) provides that termination of parental rights may be based upon persistence of conditions. Persistence of conditions is defined as:

> (3) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months:
> (A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;
> (B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and
> (C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

*Id.*

In **In re Audrey S.**, 182 S.W.3d 838, 872 (Tenn. Ct. App. 2005), this Court held that, based upon the statutory text and its historical development, the ground of persistence of conditions found in Tennessee Code Annotated Section 36-1-113(g)(3) provides a ground for termination of parental rights only where the prior court order removing the child from the parent's home was based on a judicial finding of dependency, neglect, or abuse. Here, by order of September 29, 2009, the trial court found the children to be dependent and

neglected based on Mother's use of crack cocaine, her inability to provide a stable home, her domestic assault arrest, and the likelihood of severe child abuse. Mother did not appeal the dependency and neglect finding by the Juvenile Court of Chester County.

Since the October 2012 filing of the petition to terminate her parental rights, Appellant has not lived in one place for longer than six months. While Appellant did complete the Teen Challenge program while incarcerated and tested negative for drugs on the day of the hearing, she has been unable to secure stable living conditions or transportation. In addition, Mother's failure to communicate with the children or their foster parents since August of 2012 evidences a continuing lack of concern on Mother's part. In its order, the trial court stated that Mother has exhibited "a lifetime of neglect of the children and [that] the [Appellant's] inability or lack of concern for herself and her living conditions," and explained that these issues were the reason she has been denied visitation and custody, "not because of one single thing." Further, the trial court found that Appellant "has never had the ability to parent the minor children . . . and will never have said ability to parent them." From the totality of the circumstances, it is clear that Mother has not improved the majority of the conditions that led to the removal of the children; therefore, these conditions persist, making return of the children to Mother's custody impossible.

The purpose behind the "persistence of conditions" ground for terminating parental rights is "to prevent the child's lingering in the uncertain status of foster child if a parent cannot within a reasonable time demonstrate an ability to provide a safe and caring environment for the child." *In re Arteria H.*, 326 S.W.3d 167, 178 (Tenn. Ct. App. 2010), *overruled on other grounds by In re Kaliyah S.*, 455 S.W.3d 533 (Tenn. 2015). The children have been in Appellees' custody since May of 2009. Although Appellant has had six years to improve her living conditions, she has failed to do so. As of December of 2014, Appellant is temporarily living with an individual she met while incarcerated, waiting to get repairs on two other locations. Furthermore, she has not obtained a driver's license or a job. Based on her own testimony, it appears unlikely that she will be able to provide suitable living conditions for the children in the near future.

Finally, the continuation of a parent-child relationship between Mother and the children will only threaten their ability to permanently integrate into a stable home. It is clear from the record that Mother and children have no relationship. Mother cannot even remember when she last saw the children, testifying that it was either 2010 or 2011. K.R. testified that A.C.S. thinks that Mother is his sister. The children have lived in Appellees' home for the past six years. The children consider Appellees to be their parents and Appellees' children to be their siblings. Because each of the elements of Tennessee Code Annotated § 36-1-113(g)(3) is met by clear and convincing evidence, we conclude that conditions persist making it unsafe and unstable for the children to be returned to Mother.

13

## 5. Severe Child Abuse

Finally, the trial court terminated Appellant's parental rights on the ground of severe child abuse pursuant to Tennessee Code Annotated Section 36-1-113(g)(4). Severe child abuse is a ground for termination when a "parent or guardian has been found to have committed severe child as defined in § 37-1-102, under any prior order of a court…against the child who is the subject of the petition or against any sibling or half-sibling of such child…." As defined by Tennessee Code Annotated Section 37-1-102(b)(21)(A)(i), "severe child abuse" is "the knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death…."

On August 11, 2011, the trial court held a hearing on the issue of whether Mother had committed severe child abuse. In an order dated September 2, 2011 in the dependency and neglect proceedings, the trial court found, by clear and convincing evidence, "that [E.C.R.S.] is a victim of severe abuse as perpetrated by [Mother]." In the order, the trial court noted that its "finding of severe abuse is particularly based upon the testimony of Dr. Lisa Piercey in which she opined the the child's exposure to cocaine would constitute severe abuse." Mother argues in her brief that there is no evidence that she is the one who exposed E.C.R.S. to cocaine. We note, however, that Mother did not appeal the September 2, 2011 order finding that the children were dependent and neglected based upon the finding that they were victims of severe child abuse perpetrated by mother. When a parent does not appeal a finding of severe child abuse, that finding becomes res judicata. *See In re Eric J.P.*, No. M2012-02082-COA-R3-PT, 2013 WL 1788547, at *4 (Tenn. Ct. App. Apr. 24, 2013). Because the adjudication of severe child abuse was not appealed, the September 2, 2011 order stands.

Again, Tennessee Code Annotated 36-1-113(g)(4) provides that severe child abuse may be a ground for termination if the parent "has been found to have committed severe child abuse…under any prior order of a court…." In light of the September 2, 2011 order, severe child abuse was a proper ground for termination of Mother's parental rights to E.C.R.S. Not only does the adjudication of severe child abuse apply to the victim, but, under Tennessee Code Annotated Section 36-1-113(g)(4), it also applies to any siblings and half-siblings of the victim. Because A.C.S. is E.C.R.S.'s half-sibling, this ground applies to the termination of Mother's parental rights to A.C.S. as well. Because there is a prior order in the record finding that mother committed severe child abuse against E.C.R.S., and because A.C.S. is a half-sibling of E.C.R.S., we conclude that there is clear and convincing evidence to support this ground for termination. Accordingly, we affirm the trial court.

14

## C. Best Interests of the Children

When at least one ground for termination of parental rights has been established, the petitioner must then prove, by clear and convincing evidence, that termination of the parent's rights is in the child's best interest. *White v. Moody*, 171 S.W.3d 187, 192 (Tenn. Ct. App. 1994). When a parent has been found to be unfit upon establishment of a ground for termination of parental rights, then "the interests of parent and child diverge." *In re Audrey S.*, 182 S.W.3d at 877. The focus shifts to the child's best interest. *Id.* Because not all parental conduct is irredeemable, "Tennessee's termination of parental rights statutes recognize the possibility that terminating an unfit parent's parental rights is not always in the child's best interest." *Id.* However, when the interests of the parent and the child conflict, courts are to resolve the conflict in favor of the rights and best interest of the child. Tenn. Code Ann. § 36-1-101(d). "The child's best interest must be viewed from the child's, rather than the parent's, perspective." *White*, 171 S.W.3d at 194.

The Tennessee Legislature has codified nine factors courts should consider in ascertaining the best interest of the child. Applicable factors in this case include, but are not limited to:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical conditions;
> (6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household[.]

Tenn. Code Ann. §36-1-113(i)(1)-(6). This Court has noted that "this list [of factors] is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Depending on the circumstances of an individual case, the consideration of a single factor

or other factors outside the enumerated, statutory factors may dictate the outcome of the best interest analysis. *In re Audrey S.*, 182 S.W.3d at 877.

Additionally, the Tennessee Supreme Court's recent opinion in *In re Kaliyah S.* states that:

> proof of reasonable efforts is not a precondition to termination of parental rights of a respondent parent. As with other factual findings made in connection with the best interest analysis, reasonable efforts must be proven by a preponderance of the evidence, not by clear and convincing evidence. *In re Audrey S.*, 182 S.W.3d at 861. After making the underlying factual findings, the trial court should then consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that the termination is in the child's best interest (citations omitted).

*In re Kaliyah S.*, 455 S.W.3d 533, 555 (Tenn. 2015).

In its order, the trial court made several findings concerning the best interests of A.C.S. and E.C.R.S. With regard to the first statutory factor, i.e., whether the parent has made an adjustment of conditions so as to make it safe and in the child's best interest to be in the parent's home, the trial court found that, throughout these children's lives, Mother has neglected them and has shown a lack of concern for them. We have previously discussed the instability of Mother's living conditions and her failure to avail herself of opportunities to visit the children and to establish a parent-child relationship. The evidence clearly supports the trial court's finding that Mother has not made an adjustment of circumstances, conduct, or conditions so as to make it safe and in the children's best interests to be returned to Mother's care.

Concerning the second statutory factor, i.e., "whether the parent has failed to effect a lasting adjustment after reasonable efforts by social services agencies for such duration of time that lasting adjustment does not reasonably appear possible," it is clear from the record that Mother has consistently failed to make lasting adjustments in her life to ensure a stable and safe environment for these children. Mother lost custody of the children because of her crack cocaine use and failure to provide a stable home. DCS provided assistance to her from May of 2009 until August of 2011, when the trial court relieved DCS of its duties because of Mother's failure to comply and a lack of effort on her part. Even after the filing of the petition to terminate her parental rights, in October of 2012, Mother made no effort to avail herself of the assistance and opportunities provided to her. The trial court found that Mother "has never had the ability to parent the minor children, A.C.S. and E.C.R.S., and will never have said ability to parent them." From the totality of the circumstances, there is clear and convincing proof to support the trial court's finding

regarding this statutory factor.

The trial court also made findings concerning the third factor, i.e., "whether the parent has maintained regular visitation or other contact with the child." Specifically, the trial court found that Mother has not maintained regular visitation or contact. Indeed, the record shows that Mother has not visited the children since 2011 and has made no effort to visit since 2012. As such, factor three supports termination of Mother's rights by clear and convincing evidence.

With regard to the fourth statutory factor, i.e., "whether a meaningful relationship has otherwise been established between the parent . . . and the child," the trial court found that there is not a meaningful relationship between the Mother and the children due to the lack of visitation. Mother and children do not have a relationship because she did not make efforts to form a bond with the children despite many opportunities to do so. In fact, the bond is so tenuous that these children do not recognize her as their Mother. Her failure to contact, visit, and support the children has created a situation where reuniting the children with her is not an option. According to the evidence, the children, perhaps for the first time in their young lives, have stability due to the efforts of the Appellees. The upheaval that would result from removing them from this stability would likely have a very negative impact on them.

With regard to factor five, i.e., "the effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical conditions," the trial court's findings on this factor support termination of Mother's parental rights. As discussed above, Appellees have provided the children stability, which has resulted in their physical, mental, and academic improvement. The trial court found

> by clear and convincing evidence that termination is in the best interest of the minor children and that it would be devastating beyond repair for them to leave the [Appellees] and that it would cause the minor children great harm to be removed from the [Appellees] due to the stability they have there and as they know no other parents.

Because the children are in a "loving and nurturing environment" with Appellees (who seek to adopt them), it would be extremely detrimental to their well-being to be removed from a stable environment and placed into Mother's care. Since the children's removal from Mother's care in 2009, they have been drug free, have familial relationships with the Appellees and the Appellees' other foster children, and excel in school. Placing the children with the Mother, who is still unstable and lacks a suitable home, would likely cause many of the resolved problems to resurface. The evidence clearly and convincingly supports the trial court's finding, based on factor five, that termination of Mother's parental

17

rights is in the best interest of the children.

Concerning factor six, i.e., "whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional, or psychological abuse, or neglect toward the child, or another child or adult in the family or household," this factor also weighs in favor of termination of Mother's parental rights. The adjudication of dependency and neglect in September of 2009, and the trial court's order finding that E.C.R.S. is a victim of severe child abuse as perpetrated by Mother in September 2011 raise serious concerns as to whether reunification would be in the children's best interests. Placing the children back in a situation where such neglect and abuse could occur again is not a risk this Court is willing to take.

From the totality of the circumstances, we conclude that there is clear and convincing evidence in the record to support the trial court's finding that termination of Mother's parental rights is in the children's best interests.

## V. Conclusion

For the foregoing reasons, we reverse the trial court's termination of Mother's parental rights on the ground of substantial non-compliance with the permanency plan. We affirm the trial court's termination of her parental rights on the remaining grounds and further find that termination of Mother's parental rights is in the children's best interest. The case is remanded to the trial court for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against Appellant, M.S. Because Mother is proceeding *in forma pauperis* in this appeal, execution for costs may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE